[The case reported under above title in 8 Rep. 232, 25 Int. Rev. Rec. 185, and 4 Cin. Law Bul., is the same as Case No. 9,670.]

---

MITCHELL (DANIEL v.). See Cases Nos. 3,562 and 3,563.

---

## Case No. 9,661.

### MITCHELL v. DEGRAND.

[1 Mason, 176.] [1]

Circuit Court, D. Massachusetts. May Term. 1817.

BILL OF EXCHANGE—PROTEST FOR NON-ACCEPTANCE—WHEN ACCEPTED BILL PAYABLE—MEANING OF PAYABLE AT SIGHT.

1. When, upon a bill payable at so many days after sight, the holder presents the bill for acceptance, and elects to consider what passes on such presentment, as a non-acceptance, (although in strictness he might have otherwise acted,) and protests the bill for non-acceptance, he is bound by such election as to all the other parties in the bill, and must give due notice to them of the dishonor accordingly, otherwise they will be discharged. And a subsequent acceptance by the drawee on the next day will not be sufficient to charge the drawer, in case no such notice is given, and the drawee fails before the day of payment.

[Cited in brief in First Nat. Bank of Burlington v. Hatch, 78 Mo. 15.]

2. A bill drawn payable at five days after sight, and accepted on the first day of a month, is payable on the ninth of the same month, the day of the acceptance being excluded, and the three days of grace allowed; a demand on the eighth and protest for non-payment on that day, is too early, and therefore void.

[Cited in Edgar v. Greer, 8 Iowa, 395. Distinguished in Lawson v. Farmers' Bank of Salem, 1 Ohio St. 214.]

3. A bill, payable at five days after sight, is presented for acceptance on the 30th of September, but not in fact accepted until the 1st of October, the acceptance takes effect only from that day, and does not relate back to the time of presentment on the preceding day. A bill, payable at so many days after sight, means so many days after legal sight, that is, so many days after the acceptance, for that is the sight, to which the bill refers.

This was an action on a bill of exchange drawn by P. P. F. Degrand, the defendant, in Boston, on George P. Stevenson, of Baltimore, in favor of Alexander Mitchell, the plaintiff, of the same place. The tenor of the bill was as follows.

"$1000. Boston, 26th Sept., 1816. At five days sight please pay to the order of Alexander Mitchell, Esq. one thousand dollars in bills of the Bank of the City of Baltimore, which please to charge with or without further advice to your friend and obedient servant, P. P. F. Degrand.

"George P. Stevenson, Esq., Baltimore."

On the 30th of September, it was presented for acceptance at the counting-house of the drawee, by John C. Conner, the clerk of the plaintiff; the drawee was then absent

[1] [Reported by William P. Mason, Esq.]

on military duty, but his clerk requested it might be left, saying Mr. Stevenson would accept it, when he returned. The bill was left, and immediately protested by the plaintiff for non-acceptance. On the following day John C. Conner called again at the counting-room of the drawee, and met him coming out. Mr. Stevenson told him that he was much engaged at the moment, but would accept, and send the bill to Mr. Mitchell in the course of the day. No notice was given to the drawee of the protest for non-acceptance before the 8th of October, on which day the bill was protested for non-payment, the drawee having failed before that time. On the 12th of the same month a Mr. Stanton, who was the plaintiff's agent for this purpose, called upon the defendant for payment, which he refused on the ground of not having received due notice of the protest for non-acceptance. The bill and protest were afterwards remitted to Mr. Stanton in a letter dated the 12th of October.

Shaw & Williams, for defendant, contended: First. That there was no acceptance of the bill by the drawee on the 30th of September. That there was no evidence, that Dugan, the clerk of Stevenson, had any authority to accept it; that his saying that it would be accepted, could only be considered as his opinion of what Stevenson would do. That there was nothing therefore in the present case, which could amount to an acceptance, either by the clerk or Mr. Stevenson, and that the holder himself was of the same opinion fully appeared from his having caused the bill to be protested on the same day. Sayer v. Kitchen, 1 Esp. 209; Orr v. Maginnis, 7 East, 359; Sproat v. Matthews, 1 Durn. & E. [1 Term R.] 182. Secondly. That if the circumstances, which took place on the 30th of September, did not amount to an acceptance, but on the contrary were considered in the light of a non-acceptance, and a protest made accordingly by the plaintiff, then no subsequent arrangement between the holder and drawee could so alter the case, as to affect the rights of the drawee, and change the non-acceptance into an acceptance, or in any degree release the holder from the obligation of duly notifying the defendant of the previous non-acceptance. Bentinck v. Dorrein, 6 East, 199. Thirdly. That even should the subsequent acceptance by the drawee be considered as annulling the previous non-acceptance, and rendering notice of it to the drawer unnecessary, still the defendant would not be liable, inasmuch as it appeared from the facts, that the drawee was called upon for payment a day before the bill became due; for if the acceptance was on the 1st of October, the only day, on which there could be any pretence of one, the bill would be due on the ninth, whereas it was presented for payment, and protested on the 8th of October. Wiffen v. Roberts, 1 Esp. 261. Fourthly. That there was not in fact any legal acceptance of the bill by the drawee at any time. He merely told the clerk of the holder that he would accept it, whereas the acceptance ought to have been in writing.

Prescott & Gallison, for plaintiff, argued, that notice of the protest for non-acceptance was not in this case necessary, because before there was an opportunity of notifying the defendant, the bill was accepted by the drawee, and the previous non-acceptance rendered void. That the holder had a right to consider the circumstances attending the presentment of the bill on the 30th of September as a non-acceptance, or not, as he pleased, and that although he had the precaution to have the bill protested, he was not concluded by it from taking advantage of a subsequent acceptance if made within a reasonable time. Sproat v. Matthews, 1 Term R. 182; Bentinck v. Dorrein, 6 East, 200. Secondly. That as to the presentment for payment being made too early, it was not the case, because the acceptance must be considered as referring back to the day of the first presentment of the bill, which was on the 30th of September. Beawes (1st Ed.) p. 447, § 252. Thirdly. That the verbal acceptance of Mr. Stevenson, by saying he would accept the bill, was sufficient to satisfy the law, without any acceptance in writing. Clarke v. Cock, 4 East, 57; 5 East, 510; Wynne v. Raikes, 5 East, 515; Lumley v. Palmer, 2 Strange, 1000; Pierson v. Dunlop, Cowp. 571; Bayley. Bills, 44.

In the course of the cause the counsel for the defendant called upon Mr. Stanton for a letter, which he received from the plaintiff, in order to prove, that the plaintiff himself never thought, that there was any acceptance in this case; and that he only now advanced it for the purpose of charging the drawer. Mr. Stanton stated, that the letter was destroyed by his clerk; and the clerk upon being questioned said, that he received it from Mr. Stanton with some other letters, which he was directed to destroy, and, as he supposed, for the purpose of keeping them out of the way.

STORY, Circuit Justice. This is an action on a bill of exchange, brought by the payee against the drawer. The bill was payable five days after sight; and was presented at the counting-room of the drawee for acceptance on the 30th of September. No acceptance was then made, the drawee being absent on military duty, and his clerk expressing only an opinion, that it would be accepted by the drawee. I do not say, that under these circumstances the holder was bound to treat what passed between him and the clerk, as a non-acceptance of the bill. On the contrary he might properly have waited until the next day, as a reasonable time to ascertain the intentions of the drawee, and such delay could not have been deemed laches on his part. But he elected to consider the bill as dishonored on the

30th of September, and protested it accordingly for non-acceptance. And the question now is, whether, as to all the other parties to the bill, he is not bound by that act; and I am very clear that he is. When a bill is once dishonored, the holder is bound to give notice, by the next practicable mail, to the parties, whom he means to charge for the default. Lenox v. Roberts, 2 Wheat. [15 U. S.] 377. By the legal construction of the contract they have a right to such notice, and the omission to give it, with due and seasonable diligence, discharges them from every legal liability upon the bill. No such notice was given in this case, and therefore the drawee was absolved from all liability. But it is said that on the 1st of October, and before the mail for Boston was closed on that day, the drawee accepted the bill, and thereby notice became unnecessary. Assuming that the evidence in this case clearly shows an acceptance, still in my judgment it does not change the previous legal predicament of the parties. When once a bill is dishonored, the right of the other parties to notice immediately and absolutely attaches. and no subsequent acts between the holder and drawee can vary that right. Whatever is afterwards done by the holder is at his own peril, and cannot change the responsibility of others. A holder cannot elect to treat a bill as dishonored, and afterwards as duly honored. The consequences of such a doctrine would be the most mischievous to the commercial world; and I have no difficulty in holding it not to be law.

But supposing this point were doubtful, there is another, which is decisive against the plaintiff. The acceptance, if any, was certainly not made before the 1st day of October; and upon that supposition the bill being payable five days after sight, was payable on the ninth and not on the eighth day of October; payment was therefore demanded a day before the bill became due. To avoid this conclusion, it is argued, that the acceptance may be considered as relating back to the 30th of September, when the bill was first presented. But neither of these grounds can be maintained. The doctrine of relation cannot apply to cases of this nature. The acceptance or non-acceptance of a bill is a single act, taking effect from the time when done, and having no retroactive operation. How can it be possible to say, that this bill was accepted on the 30th of September, when the party has expressly protested it for non-acceptance on that day? There is as little foundation for the other suggestion. A bill, payable in so many days after sight, means after so many days legal sight. Now, it is not merely the fact of having seen the bill, or known of its existence, that constitutes a presentment to the drawee in legal contemplation. It must be presented to him for acceptance, and the time of the bill begins to run, not from the mere presentment, but from the present-

ment and acceptance. If the acceptance be general, it is in legal construction an agreement to pay in so many days after the acceptance, for that is the sight, which the drawee admits and refers to. A different doctrine is supposed by Mr. Justice Bayley (Bayley, Bills, 67. But see Id. 53) to be asserted by Beawes (1 Beawes, Bills Exch., Ed. 8vo. 1795, p. 455, § 252); and if it be so (which is not admitted), I should not incline to uphold his authority against that of Marius (Marius, Bills, 19), who holds the doctrine I have asserted, and which I think stands sustained upon principle, as well as authority.

Plaintiff non-suited.

NOTE. Upon examination it will be found that Beawes does not assert the position contended for. His language is, "If bills are made payable at some days after sight, their acceptance is dated on the day they are presented, and from thence the days of their running are counted." Beawes, Bills Exch. (Ed. 1795) p. 455, § 252. This language is not free from all ambiguity; but its true meaning seems to be, that the acceptance is the time, from which the running of the days of a bill, payable at so many days after sight, is to be computed. which is in effect the same as the doctrine of Marius. The doctrine of Marius is recognised in Chit. Bills, pp. 195, 277; Com. Dig. "Merchant," F. 7. Campbell v. French, 6 Term R. 200, 212; Poth. de Change, pt. 1, c. 1, § 2. art. 13; Code de Comm. lib. 1, tit. 8, art. 131. See, also, Bayley, Bills, 53.