## FREEMAN'S BANK *vs.* GEORGE W. PERKINS, JR.

A bill drawn in one State and payable in another, is a foreign bill, so as to make the protest admissible in evidence, although all the parties were residents in the State where the bill was drawn.

Where an indorsed bill is sent to a bank for collection, although the bank has no interest in it, yet for the purposes of making a demand, and of transmitting notices, they are to be considered as the real holders.

Where a bill, drawn, accepted and indorsed by residents of this State, was made payable at a bank in *Boston*, and was indorsed to a bank at *Augusta*, and by that bank transmitted for collection to the bank where it was made payable, and was by the direction of the cashier of the latter duly presented there for payment by a notary, and notices thereof and of non-payment were immediately made out by him to all the prior parties, and were transmitted by the first mail to the cashier of the bank at *Augusta*, and were received by him at ten o'clock in the forenoon, two hours before the daily and only mail of that day to an adjoining town, where the indorser resided, was closed, and where no new notice was made out by the latter bank, but the notice from the notary to the indorser was directed to him and put into the mail after it was closed for that day, thereby causing a delay of one day; — *it was held,* that due diligence had not been used, and that the indorser was not liable.

EXCEPTIONS from the Middle District Court, REDINGTON J. presiding.

The action was against the defendant as indorser of a bill, of which a copy follows.

" $150. *Augusta, Feb.* 9, 1838.

Sixty days after date, pay the order of *George W. Perkins, Jr.,* at the *Suffolk Bank,* one hundred and fifty dollars, value received, and charge the same to the account of *Russell Eaton.*"

To *Richard F. Perkins, Augusta, Me.*

This was indorsed to the plaintiffs by the defendant. The parties, at the time, all lived within the State of *Maine,* and the bill was drawn and indorsed there. The *Suffolk Bank* was located in *Boston, Massachusetts.*

To prove a protest for non-payment, the plaintiffs produced, and offered in evidence a paper under the hand and seal of a notary public in *Boston.* This was objected to by the counsel for the defendant, as not being legal evidence to prove a demand. The District Judge admitted it. The protest showed that the bill was duly demanded at the *Suffolk Bank,* in banking hours, on the 13th

Freeman's Bank *v.* Perkins.

day of *April*, 1838, and payment refused, on account of no funds being there for the payment thereof. The notary in his protest states, that on the same day, " I sent notice of the non-payment thereof to the drawer, first indorser and acceptor, enclosed to *Benjamin Davis, Esq.* president, per mail, to *Augusta, Me.*, requiring payment of them respectively." The plaintiffs proved by *J. Stanwood*, that he, on *Monday, April* 16, 1838, at the request of *B. Davis*, then president and acting cashier of the *Freeman's Bank*, left a notice in due form from the notary with *R. F. Perkins.* and put a similar notice, directed to *George W. Perkins, Jr.* at *Hallowell*, where he then resided, into the post office at *Augusta*, after the western mail had left that place on that day. The only mail communication to *Hallowell* is by the western mail. The *Suffolk Bank* and other *Boston Banks* closed business at two o'clock, P. M. The *Boston* mail for *Augusta*, then closed each day at twelve o'clock at noon. The mail from *Augusta* for the west, passing through *Hallowell*, was then also closed each day at twelve o'clock at noon. It was not usual in *Boston* to protest bills until near the close of banking hours. By the usual course of the mail, at that time, a letter put in the office in *Boston* in season for the mail of the fourteenth, would reach *Augusta* post office on the next day between the hours of six and eleven in the afternoon. The letter from the cashier of the *Suffolk Bank* to *Davis*, enclosing the bill, protest and notices, was in fact received by *Davis* on *Monday, April* 16, 1838, at ten o'clock in the forenoon. There was no other evidence to show that the bill had been left in a bank for collection. It was objected by the defendant, that this was not sufficient. The Judge ruled that it was. The counsel for the defendant also objected, that there was not sufficient evidence of notice to the defendant to charge him as indorser. This objection was overruled. The verdict was for the plaintiffs, and the defendant excepted.

*Vose*, for the defendant.

Being an inland bill, the parties all living in this State, the protest is not evidence. In *Green* v. *Jackson*, 15 *Maine Rep.* 136, the bill was drawn in this State on a person in another State, and therefore that case does not apply here.

Here the notice came from the notary at *Boston*, all made out,

and should have been forwarded by the first mail. This was not done, and the indorser is discharged. *Mead* v. *Engs,* 5 *Cowen,* 303 ; *Mitchell* v. *Degrand,* 1 *Mason,* 176 ; *Robinson* v. *Ames,* 20 *Johns. R.* 146 ; *Sewall* v. *Russell,* 3 *Wend.* 276.

Whether reasonable diligence to give notice has been used, is a question of fact for the jury.

*Bradbury,* for the plaintiffs.

When a bill is drawn in one State payable in another State, the protest is evidence. *Green* v. *Jackson,* 15 *Maine R.* 136.

Each party to a bill has one day to give notice to the party next immediately liable. There can be no settled rule, unless a day is given. If less than that is required, it will be a question of fact in each case, how much time is necessary to prepare and give the notice. *Chitty on Bills,* 316, 319, *note* 1 ; *Bayley on Bills,* 173 ; *Geill* v. *Jeremy,* 1 *Moody & M.* 61 ; *Whitwell* v. *Johnson,* 17 *Mass. R.* 449 ; 3 *Conn. R.* 489 ; *Scott* v. *Lifford,* 9 *East,* 347 ; *Darbishire* v. *Parker,* 6 *East,* 10.

Where there is no dispute about the facts, it is for the Court to determine whether due diligence has been used.

The opinion of the Court was drawn up by

WESTON C. J. — This being a bill drawn in one State, and payable in another, is a foreign bill, so as to make the protest admissible in evidence. *Buckner* v. *Finley & al.* 2 *Peters,* 586, *ibid.* 688, opinion of *Washington J. Phœnix Bank* v. *Hussey,* 12 *Pick.* 483 ; *Green* v. *Jackson,* 15 *Maine R.* 136. The bills under consideration in those cases, were drawn by persons in one State upon persons resident in another. But the principle which governed those decisions, applies with equal force to bills drawn in one State and payable in another ; although all the parties might be residents in the same State. The statute of 1821, *c.* 88, allows damages on such bills, upon protest.

From the protest in the case it may be understood, that the cashier of the *Suffolk Bank,* as such, was resorted to by the plaintiffs, to obtain payment of the bill. He is to be considered then, as it respects the time of causing a protest to be made and of giving notice, as a distinct holder or party to the instrument. *Chitty on Bills,* 521, 9th *Am.* from 8th *London Edition,* and the cases

there cited. On the day of the maturity of the bill, he caused it to be protested for non-payment and notices to be forwarded to the drawer, indorser and acceptor, which were mailed the next day. And this was using all the diligence, which the law requires. *Chitty,* 513.

The cashier of the *Suffolk Bank* would have done his duty, if he had caused notice to be given to the plaintiffs, of whom he received the bill. And upon the receipt of such notice by them, the defendant, the indorser, living in another town, notice from them to him would have been seasonable by the mail of the succeeding day. This rule, for the sake of uniformity, has generally been adopted ; although it might be hazardous to neglect to send by the next convenient or practicable mail. *Mitchell* v. *Degrand,* 1 *Mason,* 176. In this case two hours only elapsed, between the receipt of the notice and the close of the next mail. To hold that the plaintiffs, by their president, who it appears acted also as cashier, should give notice by that mail would be requiring a degree of strictness, not warranted by the decisions. But the plaintiffs gave no notice of their own to the defendant. They only forwarded the notice prepared for him by the notary at *Boston,* at the instance of the cashier of the *Suffolk Bank.*

If either knew the residence of the indorser, his notice should have been sent to him directly at *Hallowell,* through which the mail passes in its transit to *Augusta.* But if the cashier of the *Suffolk Bank* was ignorant of his residence, which may have been the fact, his notice was properly enclosed to the president and acting cashier of the *Freeman's Bank.* He knew the indorser's residence ; and he had nothing to do but to put the proper direction upon his notice, and to leave it in the post office. Sending no notice of his own, but merely forwarding that, which was prepared by the notary, it appears to us that it should have been sent by the mail of that day. There was ample time for this purpose. This not having been proved, due diligence by the holder is not made out.

*Exceptions sustained.*