JOHN CHRISTOPHER WAGNER and another *v.* HENRY B. KENNER.

A note dated the thirty-first of September, will be considered as having been made on the thirtieth of that month ; and where such a note was payable at six months, it will be due on the 30th March, and must be protested on the second of April following.

The computation of the time of maturity of a bill or note, payable one or more months from date, must be made according to the Gregorian calendar, *i. e.* from the day of the month on which it bears date to the corresponding day of the month of its maturity, without reference to the number of days in the months, and such has been the custom in this city.  Thus a note drawn on the 28th, 29th, 30th, or 31st of January, payable one month from date, will be due on the 28th of February, if the year be not bissextile, because the month of February has no other corresponding day ; but a like note dated the 28th or 29th of February, will be due on the 28th or 29th of March. Such a note drawn on the 31st March, will be due the 30th of April ; but if dated on the 30th of April, it will be due on the 30th, not the 31st of May.

Art. 2055 of the Civil Code, which provides that, " where the term referred to in a contract, consists of one or more months, the parties, if they have not made any other explanation, shall be deemed to have meant months in the order in which they stand in the calendar after the date of the obligation, and with the number of days, such months respectively have," does not apply to bills of exchange or promissory notes.

The laws of Spain were not abrogated by the transfer of the territory of Orleans to the United States, but the commercial law of the latter became, by that transfer, the law of the territory of Orleans.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

MARTIN, J.  The defendant, sued as endorser of a promissory note, is appellant from a judgment against him.  His counsel has contended that the protest was not timely made, and this is the

only question upon which the parties have placed the case before us.

The note bears date the 31st of September, 1839, and was payable six months after date. It was protested on the 3d of April, 1840.

*McHenry,* for the plaintiffs. 1. A date is not necessary to the validity of a note. An impossible date, as the 31 September, is no date. A note, not dated, must be considered as bearing date from the day on which it was really made or delivered. *Goddard's case,* 2 Coke's Rep. 5. *Lansing* v. *Ten Eyck,* 2 Johns. 203. *Armitt* v. *Breame,* 2 Lord Raymond, 1079. Chitty on Bills, 59. 2. In computing the maturity of bills or notes, calendar not lunar months must be reckoned. A note drawn on the 30th of September, at six months, must be protested on the 3d of April, following. See Civ. Code, art. 2055. Chitty on Bills, 159, 267. *Leffingwell, &c.* v. *White,* Johnson's Cases, 100. *Putnam et al.* v. *Sullivan et al.,* 4 Mass., 53. *Williams* v. *Matthews,* 3 Cowen, 252.

*I. W. Smith,* for the appellant. 1. A note bearing an impossible date has no date; and in such a case the party suing on it must prove when it was put in circulation, and the record contains no such evidence. 2. The note was not protested on the proper day. There is no day in the year on which a note can be drawn payable in six months, so that the last day of grace shall fall on the third of April. If drawn on the first of October, it will fall due on the first and fourth of April. If drawn on the 30th September, it will become due on the 30th March and 2d April. 2 Pardessus, Cours de Droit Commercial, part 2, tit. 1, ch. 1, § 1, p. 66. Armand Dalloz, Dictionnaire de Jurisprudence, title, Effets de Commerce, § 337. 6 Dalloz, Recueil Alphabetique, p. 623, 626–9, title, Effets de Commerce. Sirey, Jurisprudence de la Cour de Cassation, year 1817, part 1, p. 382, 3. Ib. year 1818, part 1, p. 187–9. Ib. year 1819, part 1, p. 237, 8. 3 Favard de Langlade, page 266, 7. Nougier, Des Lettres de Change, No. 25, p. 22. 2 Horson, Questions, p. 29–47. Rogron, Code de Commerce, p. 131. 4 Petersdorff's Abridgment, p. 425, and notes. Kyd on Bills, p. 5. Foster on Bills of Exchange, ch. 7, p. 33 to 37.

MARTIN, J. The counsel for the appellees has contended that the question was correctly solved, under a provision of the Code of Louisiana, art. 2055, which is in the following words : " Where the term referred to by the contract, consists of one or more months, the parties, if they have not made any other explanation, shall be deemed to have meant months, in the order in which they stand in the calendar, after the date of the obligation, and with the number of days such months respectively have." He has urged that there being no such day in the calendar as the 31st of September, we must consider the word, 31st, as not having been written, and the note as bearing date in the month of September generally ; and that we must adopt the conclusion most favorable to the defendant, to wit, that the note was made on the last day of the month. *In dubiis, semper quod minimum est sequimur.* In cases of doubt, the conclusion must be *in favorem solutionis*—the obligation must be taken in the sense the least onerous to the obligor. Assuming then that the note bears date the last day of September, and it being payable six months after date, the counsel has contended that the drawer was entitled to the following six calendar months ; that the note did not become payable until the last day of these months, to wit, the 31st of March ; and that the 3d of April was the last of the days of grace, on which the protest should have been made, and on which it was made accordingly.

The counsel for the appellant has contended that all commercial questions were not intended to be regulated by the Code of Louisiana. That the legislature intended to prepare a Code of Commerce, which should contain the principles according to which such questions should be solved. That they appointed jurisconsults who prepared such a Code ; and that we have it in print, though it has never received the sanction of the legislature. The Superior Court of the late territory of Orleans, very early held that although the laws of Spain were not abrogated by the taking possession of the country by the United States, yet that, from that event, the commercial law of the nation became the commercial law of New Orleans ; and this court has frequently recognized the correctness of these early decisions, principally in cases of bills of exchange, promissory notes, and insurances.

Accordingly, it is urged, that the holders of the note cannot re-

cover, as the protest was not made in due time ; and that it should have been made on the 2d day of April. The counsel for the appellant relies on Kyd on Bills, p. 5. Petersdorff's Abridgment, vol. 4, p. 425, and Foster on Bills of Exchange, chap. 7, p. 33. He introduced the officers of most of the banks in this city, and a number of notaries, all of whom joined in deposing that a note like that under consideration, bearing date the 30th of September, and payable six months after date, ought to be protested on the 2d of April following ; and that this has been the universal practice of all the banks in this city, from the establishment of these monetary institutions. Such too, is the practice in France. Dalloz, Jurisprudence Générale, vol. 6, sec. 4, in the title Effets de Commerce, lays down the general principle thus : The computation of bills or notes drawn one or more months from date is made according to the Gregorian calendar, that is to say, from the day of the month it bears date, to the corresponding day of the month of its maturity, without any attention to long and short months. For instance, a note drawn on the 28th, 29th, 30th or 31st of January, and due a month from date, will be due on the 28th of February, if the year be not bissextile, because the month of February has no other corresponding day ; those drawn on the 28th or 29th of February and due one month from date, will be due on the 28th or 29th of March, because the corresponding days are found in the month of March. A bill drawn the 31st of March, and due one month from date, will be due on the 30th of April ; and, on the other hand, one drawn on the 30th of April will be payable on the 30th of May, and not the 31st.

This mode of calculation facilitates greatly the ascertaining of the day of the protest, and the computation of interest. It is extremely simple. The mode pointed out in the Code of Louisiana, would perhaps be without objection, if notes were always drawn on the last day of the month, for then they would always become due on the same day of the month of the maturity ; but if a note were, e. g., dated the 16th day of January, and payable one month after date, that month would not be a calendar month, but be composed of two halves of calendar months, to wit, the fifteen remaining days in January constituting one half of that month, and the first fourteen days of the next, so that it would become due in

29 days, to wit, on the 14th of February. The computation contended for by the appellant, is the only one which affords a general rule without any exceptions. It is moreover recommended by universal practice in this city, and I believe throughout the United States. We understand that the case has been placed before us, on authorities which were not laid before the first judge.

A majority of the court concurring in this opinion, it is, therefore, ordered, that the judgment of the lower court be reversed, and that there be judgment for the defendant, with costs in both courts.

Morphy, J. I have read the opinion prepared by Judge Martin, and entirely concur in it. There is no subject on which a uniform rule is more desirable, than on the one under consideration. The mode of computation adopted appears to be almost universally pursued throughout the commercial world. It is less liable than any other to error and uncertainty. This, in addition to the reasons assigned in the opinion just delivered, should, in my opinion, entitle it to a preference.

Bullard, J. I concur in the opinion pronounced by Judge Martin. The article 2055 of the Louisiana Code, declares that where the term referred to by the contract consists of one or more months, the parties, if they have not made any other explanation, shall be deemed to have meant months in the order in which they stand in the calendar after the date of the obligation, and with the number of days such months respectively have. A literal interpretation of this article would, perhaps, sustain the judgment of the Commercial Court; but I think it important to give it such a construction as will conform to general commercial usage in this, as well as in other States. This usage and general understanding appear to be as stated by the senior judge.

Garland, J., *dissenting.* The defendant being sued as the endorser of a promissory note, drawn by one Hall, for answer, alleged fraud, in altering the note from $250 to $2500, after it was endorsed. He further avers that he is not bound as endorser, as the note was not protested in due time, and notice given to him.

Upon the first ground of defence, I concur with the majority of the court, that no such fraud was shown in obtaining the endorsement, or in altering the note, as will discharge the defendant. This note, and another appear to have been signed and endorsed

in blank, both as to amounts and dates. When Hall filled up the note sued on, he dated it on the 31st of September, 1839, payable six months after date. The note was protested for non-payment on the 3d of April, 1840, and notice given to the defendant, who contends that demand of payment should have been made on the 2d of April, as the note was due on the 30th of March, 1840. The main question in the case is, which was the proper day of protest. There is no difference of opinion as to the date of the note. The 31st of September being an impossible day, the note is to be considered as bearing date on the 30th of that month. The counsel for the defendant contends that the note became due on the 30th of March, 1840, and that it should have been protested on the 2d of April. I do not think so.

The Civil Code, article 2055, says, " that where the term referred to by the contract, consists of one or more months, the parties, if they-have not made any other explanation, shall be deemed to have meant months in the order in which they stand in the calendar after the date of the obligation, and with the number of days such months respectively have." It is not denied that if this article be applicable to the case, the protest was properly made on the 3d of April, and that the defendant is bound ; but it is contended that this positive provision of the Code is to be disregarded, and the matter regulated by the commercial law, or, in other words, that this article of the Code does not apply to promissory notes and bills of exchange, but to other contracts, because it was the intention of the legislature, when the Civil Code was adopted, to have also made a Commercial Code ; and that not having done so, the case is to be governed by the general commercial law. That it was the intention of the legislature which ordered the amendments to the old Civil Code to be prepared, to have a Commercial Code prepared, I do not deny ; but that it was the intention of the legislature which adopted those amendments, or of any subsequent legislature, to adopt a Code of Commerce, I do not admit ; and the evidence of this is, that none has ever been adopted, or even seriously considered by any legislature since the one that ordered the preparation of such a Code. I cannot consent to disregard a positive law, because a particular legislature may, at a distant day, have intended to make some other law on the sub-

Wagner and another v. Kenner.

ject.   The argument is peculiarly unfortunate, since it is not shown that the case was provided for in the Commercial Code prepared by the jurisconsults.

If A. and B. make a contract by a notarial act, the term of its performance is regulated by the article 2055 of the Code ; but if they make a promissory note, founded on the same consideration, then a shorter term is stipulated, though the same language be used to express their intentions, and the promise be identical in every respect.   I cannot, upon the authority of a case of palpable judicial legislation, consent to disregard as general a provision of the Code as any contained in it.

That it was not the intention of the legislature which sanctioned the amendments to the old Civil Code, to leave every thing in relation to commercial matters to be regulated by a Code of Commerce, is apparent from the number of provisions in the new Code and in our statute law, in relation to commerce, and to those engaged in trade.

But it is assumed that the commercial law has regulated this matter in France, England, and the United States, in favor of the position assumed by the defendant's counsel.   That the French authorities go far to sustain the position assumed, I admit ; but that it is settled in England, or in the United States, by any great weight of authority, I do not concede.

In England it is well settled that in cases of bills of exchange and promissory notes, the month named in those contracts is a calendar month.   2 Black. 141.   3 Brod. & B. 187.   3 Starkie on Evidence, part 4, 1399.

Chitty, in his Treatise on Bills, says, that " where bills are payable at one, two, or more months after date or sight, the mode of computing the time when they become due, differs from the mode of computation in other cases "   When a deed, or act of parliament mentions a month, it is construed to mean a lunar month, unless otherwise expressed ; but where a bill is made payable a month, or months after date, the computation must, in all cases, be by the calendar month.

Where a bill is payable so many days or months after date, the day of the date is excluded in the computation.   Thus a bill dated on the 1st of January is due on the 1st and 4th of Feb-

ruary. Chitty, 267, 268, ed. 1826. Bayley, 113. The same principles are well settled in the United States. 1 Johns. Cases, 99. 15 Johns. Rep. 120. 1 Mason, 176. 4 Dallas, 143. The note in this case is at six months after date ; the time, therefore, commenced running on the 1st of October, 1839, and six calendar months carried it to maturity on the 31st March, exclusive of the days of grace.

But it is said that this mode of computation does very well when a note or bills dated, or accepted, on the first or the last day of a month ; but that if it is to run from some other day, then it must fall due on the corresponding day in the next month. This is true, but it gives the debtor precisely the same space of time, that is the same number of days to discharge his debt. For instance, a bill dated January 15th, payable one month after date, becomes due on the 15th—18th of February, which gives thirty-one days, exclusive of the days of grace. So a bill dated February 15th, will mature on the corresponding day in March, and give twenty-eight or twenty-nine days for it to mature, according to the year in which it may be dated ; and thus it will continue the year round, neither party obtaining any advantage over the other. But if the computation contended for by the defendant be correct, the year would be divided into parts of 181 and 184 days, and there would not, in either case, be six calendar months. There are 182 days from the 30th of September to the 31st of March, and 183 from the 31st of March to the 30th of September, which divides the year as equally as it can be done without fractions.

The weight of testimony in relation to the custom in New Orleans is in favor of the note falling due on the 30th of March, 1840, but I do not think the custom is so well and generally established as to become a law ; and it is evident that the custom operates to the advantage of the banks, and of creditors whose claims are bearing interest.

I, therefore, think the judgment of the Commercial Court ought to be affirmed.