## CRAWFORD v. THE BRANCH OF THE BANK OF THE STATE OF ALABAMA AT MOBILE.

1. A notice at the suit of a Bank against one of its debtors, was received by the sheriff on the 20th April, 1842, executed on the 7th May thereafter, and informed the defendant that the plaintiff would move for judgment against him "at the next term," &c., "to be holden," &c., in 1841. In May, 1842, the defendant appeared and filed a plea *in propria persona: Held*—that the fair inference was, that the motion was to be submitted at the term of the Court next succeeding the time, when the notice was issued and served, that so much of the notice as particularizes the time when the Court is to sit, may be rejected as surplusage ; and that an appearance and plea to the merits is a waiver of the objection to the process, if it were otherwise available.

2. Where the debtor of a Bank, against whom the summary remedy (provided in such cases) has been prosecuted, pleads to the merits, and a verdict and judgment are rendered against him, he cannot object that the notice is defective, if it show *prima facie* that he is indebted to the plaintiff : *Semble*—where a motion is the initiatory process for the collection of a debt, it is not scanned with the same strictness as a declaration, or notice against an officer for default in the performance of his duty.

3. It is not enough to show that notice was sent through the post office addressed to the drawer of a bill at a particular place, but it should be proved that he resided there, or that that was the place at which notice should have been addressed to him.

4. The post mark on a letter is not evidence *per se* that the letter was deposited in the post office on the day indicated by the date of the post mark, yet its genuineness may be proved not only by the person who marks it, but by any person who is in the habit of receiving letters from that office. Upon such proof being made, it may be left to a jury to say whether the letter on which a post mark is, was not in the office where the mark purports to have been made, at the time of its date.

5. The notary public who protests a foreign bill is authorized to give notice of its dishonor to all persons who are responsible to the holders, and a notice describing himself officially to which his name is *printed* instead of *written* is good. In such case it may be intended from the similarity of the name that the person who made the protest, was the same who gave the notice, although there is no official seal attached to the notice.

6. Each party to a bill has, until the day after he has received notice of its dishonor, to give or forward notice to his prior indorser, and so on until the notice has reached the drawer.

7. The notary protesting a bill may send notices to the holder to be given to the prior parties, but the person to whom the notices are sent must appear to be the

holder, or perhaps it may be sufficient to show that he is his agent: in transmitting the notice made out by the notary, the holder is not bound to use a greater degree of diligence, than if he had prepared and forwarded notices in his own name.

8. Where a notice of the dishonor of a bill identified it with *reasonable* certainty, and there being no evidence to show that the party to whom it was given, could have been misled, the Court might have informed the jury, that, if they found the other facts in respect to the notice in favor of the plaintiff, the notice itself
, in the absence of countervailing proof sufficiently identified the bill.

9. It cannot be judicially known, that a person who was elected by the Legislature as one of the directors of a Bank, was appointed by the board its president *pro tem.*, merely because he certifies that a debt sought to be recovered by notice, is *bona fide* the property of the Bank.

Writ of error to the Circuit Court of Mobile.

THIS was a proceeding by notice and motion under the charter of the Bank, to recover a judgment against the plaintiff in error, as the drawer of a bill of exchange, drawn by him at Mobile, the 15th April, 1841, on Wm. C. Dickinson of Mobile, requesting him to pay to Henry G. Davis, or order, nineteen hundred and fifty-two 92-100 dollars, on the 20th December next thereafter, payable at the Merchants' Bank of the City of New York. The cause was tried on the plea of *non assumpsit*. On the trial the defendant below excepted to the ruling of the Court. The bill of exceptions shows that the notice, with the returns thereon, as well as the certificate of the president of the Bank was produced, without proof to sustain the same; whereupon the defendant objected to the motion, without proof of the notice and its return, also the official character of the persons whose names were on the notice and certificate; but the Court overruled the objection, and entertained the motion.

The plaintiff then adduced the bill and its protest for non-payment, as also a notice signed by the notary in New York, informing the defendant of the dishonor of the bill. A witness testified that the notice was received by the plaintiff in a letter written by the cashier of the Merchants' Bank of New York, whose name is on the bill; and on behalf of that Bank the bill was protested on the 23d of December, 1841. When the notice was received by the plaintiff at Mobile, its cashier on the same day, (viz: the 6th January, 1842,) transmitted it through the post office at Mobile, to the defendant at St. Stephens. It

was admitted that the direct route from New York to St. Ste-phens was by way of Claiborne and Jackson; that letters were usually transmitted by these places, and would be delayed in reaching their point of destination if they were carried to Mobile first.

The notice received by the plaintiff was postmarked New York, the 24th December, 1841. The defendant objected that the proof was not sufficient to sustain the motion; that the notice on the face of it was insufficient, because it did not ap-pear that the bill was discounted, and the person whose name was printed as a subscriber to the notice, and described as a notary, was not shown to have adopted it as his act; nor did he appear to be a party to the bill. *Further*—it was objected that it did not appear otherwise than by a post mark, that the notice was forwarded from New York in due season, " and that the notice to defendant was not sufficient." Upon all the facts it was insisted that judgment should be rendered for the defendant. But the Court overruled all the defendant's ob-jections, and adjudged the proof to be sufficient: whereupon the defendant agreed that a judgment might be rendered against him as on verdict, and the several legal questions aris-ing upon his bill of exceptions were duly reserved.

CRAWFORD, Pro. Se., submitted an argument in writing, and J. A. CAMPBELL, argued the cause at the bar for the plaintiff in error. The following points were made:

1. The notice required the defendant below to appear two years before the motion was submitted, and nearly twelve months before the maturity of the bill, and show cause why a judgment should not be rendered thereon against him. [Craw-ford v. The Planters' and Merchants' Bank, 4 Ala. Rep. 313.]

2. The notice is insufficient because it does not alledge a de-mand of the payment of the bill at maturity, and a notice of non-payment to the defendant as drawer. [6 Cranch's Rep. 221; 1 Stewt. & P. Rep. 488.]

3. The Circuit Court instead of referring the facts to the jury, took upon itself to adjudicate both the law and the facts—a course of procedure wholly unwarranted where an issue has been submitted to the jury for its decision. [4 Cranch's Rep. 71.]

4. It does not appear that the defendant resided at St. Stephens at the time the notice was sent there, or that there was a post office at that place. The bill of exceptions professes to state all the evidence, and it cannot be intended that there was other proof on this point than the record discovers. [Stephens v. Broadnax & Newton, 5 Ala. Rep. 258.]

5. The post mark upon the letter forwarded from New York, is no evidence that the notice was sent on that day. The law does not require such a mark to be made, but it is made the duty of the deputy post masters, by the 73d rule for the regulation of their conduct, thus to make up the mails.

6. The notice of non-payment has the printed name of John D. Campbell, described as a notary public at its foot, yet it is insisted that he was not authorized to give notice. Notice should be given by "the holder of a bill, or some other party entitled to call for payment, or reimbursement." The notary who protests a bill is the agent of the holder, but there is no evidence that Campbell was a notary; this could only be shown by his official seal, or other legal evidence of the fact. The holder of the bill might have adopted this imperfect notice as his own act by inclosing it in a letter, but this was not done; the notice was merely folded in letter form, addressed to the drawer at St. Stephens, without a word being written by the plaintiff's officer or any one else. [2 Hawks. Rep. 560.]

7. There was no proof that the Merchants' Bank of New York acted as the agent of the plaintiff, or that the latter was the holder of the bill. It is admitted that it is competent for a notary who protests paper to return it to his principal, and the latter may give the necessary notices to charge the previous parties; but this does not appear to have been done. It is insisted, that as notice was not given in a manner *prima facie* regular, the proof should show that the defendant was informed of the dishonor of the bill quite as early as he would have been had the notice been transmitted from New York to St. Stephens direct. [Bayley on Bills, 225; Chitty on Bills, 229; 6 Shepley's Rep. 292; 8 Porter's Rep. 262.]

8. The Court should have referred it to the jury, to inquire whether the notice of non-payment sufficiently identified the bill. [Bailey on Bills, 253; 3 Wend. Rep. 456.]

Crawford v. The Branch Bank at Mobile.

9. The signature of the president *pro tem.*, of the Bank, to the notice of the motion, or to the certificate, that the bill was the property of the plaintiff, was not shown to be genuine; or that the character of the individual subscribing them was what the notice and certificate imports.

DARGAN, for the defendant.

COLLIER, C. J.—The notice informs the defendant, that the Branch of the Bank, &c., will move for judgment against him, "at the next term of the Circuit Court to be holden for said county of Mobile, on the sixth Monday after the fourth Monday in March, 1841, and on the seventh Monday of said term." This notice was received by the sheriff of Mobile on the 20th of April, 1842, and executed on the 7th of the succeeding month. In the transcript there is a plea entitled, Fall Term, 1842, which was interposed by the defendant below *in propria persona;* at the foot of which the following memorandum is attested by the clerk, viz: "Filed, 5th May, 1842." The fair inference from all this, is, that the motion was to be submitted at the term of the Court next succeeding the time when the notice was issued and served. We have repeatedly held, that where a writ requires the defendant to appear *at the next term of the Court,* and particularizes a time past, too remote in the future, or a time at which the Court does not sit, that this description of the term will be rejected as surplusage, and the process be held returnable at the term prescribed by law. We will not say that a notice, when it is the initiatory process, shall be governed by the same rule; but we cannot think that there is any principle that will permit a party to come into Court, plead to the merits of the action, and then say that the process is defective, because it is returnable at a time previous to its service.

In Barton, et al. v. Peck, 1 Stew. & P. Rep. 486, it was determined that in a summary proceeding against a sheriff and his sureties under the statute, for the failure to pay over money collected on an execution, the notice must alledge that a demand was made of the sheriff, by whom, when and where; otherwise it will be bad on demurrer. This case was recognized in Broughton, et al. v. The Bank of Alabama, 6 Porter's Rep. 48, and under the influence of its authority it was held

27

to be competent to object to the notice 'in such case, on demurrer, or after *judgment by default* on error. But the objection never could be allowed after plea and verdict. It may be remarked, that the cases cited have never been applied to notices at the suit of a Bank against a debtor. In Lyon v. The State Bank, 1 Stew. Rep. 442, it was decided that such notice is sufficient, if it identify the debt with reasonable certainty, though it has not the technical precision of a declaration. This decision has been followed in practice, and the Bank notices have been considered unexceptionable, although they *do not* contain the extrinsic allegations that are essential to a declaration.

It is true, it does not appear to have been shown that the defendant resided at St. Stephens, or that, that was the place at which notice should have been addressed to him. This was necessary to have been proved in order to make *the notice available*. We cannot think that this objection was specifically made in the Circuit Court, or it doubtless would have been sustained ; yet upon the general objection of the insufficiency of notice to the defendant, we think it must be considered as properly presented. General objections calculated to entrap the Court, and the adverse party should be discouraged, and where they are not promotive of justice, should be most unfavorably regarded in an appellate Court; but the objection in the present instance, is not so loosely expressed as to authorize us to overlook it.

It is not only necessary that the drawer of a bill should be notified of its dishonor by depositing a notice in the post office, when such is the *proper medium of conveyance*, but it should be properly addressed to him. Now there is nothing in the record to show that the defendant resided at St. Stephens, or *that notice should not have been* given him at New York or Mobile. In the absence of proof on this point it cannot be assumed that his residence was at one place or another, or that the notice was properly transmitted. The Court then should have required the plaintiff to make further proof on this point.

In respect to the post mark upon the letter supposed to have been mailed at New York, it is not evidence *per se* that the letter was deposited in the post office on the day indicated by

its date. Chitty in his Treatise on Bills, (645–6,) thus states the law on this subject : " In civil cases, the post mark upon a letter seems to be evidence of the time and place when it was put into the post office ; and sometimes a reference to the *post mark* on a letter misdated will establish the real time of sending notice of the dishonor. In such case, although the post mark is not necessarily assumed to be genuine, and the best evidence of its authenticity would be the testimony of the very person who impressed the mark, yet it should seem that it may be proved by any post master, or any person in the habit of receiving letters by that post." It has been frequently held that post marks proved to be such, are evidence that the letters on which they are, were in the office where those marks purport to have been made, at the time of their date. [Kent v. Lowen, 1 Camp. Rep. 177; Rex v. Watson, Id. 215; Langdon v. Hulls, 5 Esp. Rep. 156 ; Rex v. Johnson, 7 East. Rep. 65 ; Fletcher v. Braddyll, 3 Starkie's Rep. 64 ; Rex v. Plummer, R. & M. C. C. 264; Abbey v. Lill, 5 Bing. Rep. 299.] In the present case there was no evidence of the genuineness of the post mark, and that fact could not be assumed in despite of the objection of the defendant, to the insufficiency of the proof to show, that he had been duly notified of the dishonor of his bill. The post mark being proved by competent evidence, the date which makes a part of it, would show *prima facie* at what time the mail was made up in which the notice was sent.

Upon the dishonor of a foreign bill the custom of merchants makes a protest indispensably necessary, and the production of this protest attested by a notary public, without proof of the signature, or affixing of the seal, will in the case of a bill payable and protested out of this country, be evidence of the dishonor of the bill, and to it all foreign Courts give credit. [Chitty on Bills, 9th Am. ed. 361–2.] But the mere protest is not sufficient, a copy of it, or some other memorial must be sent within a reasonable time to the person on whom the holder means to call for payment. [Id. 363 ; Wallace v. Agry, 4 Mason's Rep. 336 ; Lenox v. Leverett, 10 Mass. Rep. 1.]

The law does not prescribe any form of notice to an indorser; all that is necessary is, that it should be sufficient to put the party on inquiry, and to prepare him to pay it or to defend

himself. Even if there be some uncertainty in the description of the bill or note, if it does not tend to mislead the party it will be good. [Reedy v. Seixas, 2 Johns. cases, 337; Mills v. Bank of the United States, 11 Wheat. Rep. 431; Forster v. Jurdson, 16 East. Rep. 105; Chitty on Bills, 9th Am. ed. 501, et post & notes.] Where a note was payable in Bank, and a notice of non-payment was given on the day that it became due, but in the notice the name of the maker was mistaken and the note was stated to be due three days before; the notice was held sufficient, it being in evidence that the indorser was liable on no other note in Bank. [Smith v. Whiting, 12 Mass. Rep. 6; 3 Kent's Com. 2d. ed. 94.] A notice in these words, "I give you notice that the bill drawn by you, &c., is dishonored," was adjudged sufficient. [Beachamp v. Cash, D. & R. Rep. (N. P.) 3.] So it has been held, that it need not state at whose request it was given, or who was the owner of the note. [Shed v. Bret, 1 Pick. Rep. 401.] Nor is it necessary that it should state that the holder looks to the party notified, for payment; this is the natural implication from the notice itself. [Bank of the United States v. Carneal, 2 Porter's Rep. 543; Cowles v. Hart, 3 Conn. Rep. 516.]

It is said not to be necessary that the notice should come from the party who holds the bill, when dishonored, that it suffices if given by any person who is a party to it. And it has therefore been held, that if the drawer or indorser of a bill of exchange receives due notice of its dishonor, from any person who is a party to it, he is directly liable upon it to a subsequent indorser, from whom he had no notice of the dishonor, even from the acceptor. [Chitty on Bills, 9th Am. ed. 527-8, 530.]

The notice in the present case is addressed to the defendant by writing his name at the foot of the page, as will be seen below. It is dated New York, December 23, 1841, and proceeds thus : " Please to take notice that your two bills on Wm. C. Dickinson, one for 1,000 dollars and the other for 1,952 92-100 dollars, and accepted by him, are protested for non-payment, and that the holder looks to you for the payment thereof. Your obedient servant,       JOHN D. CAMPBELL, Notary Public, Merchants' Bank, and Attorney at Law—office No. 20, Wall street, MR. WM. CRAWFORD."

This notice when taken in reference to the bill which was payable to the Merchants' Bank, at which Campbell seems, by his subscription to exercise the office of notary, and the protest which was doubtless adduced at the trial, though it does not form a part of this transcript, would authorize the presumption, that the party in whose name the notice is made out, was a notary public, and the same who protested the bills. This remark is made upon the presumption that the same name appears to the protest and notice.

The fact, that the name of "John D. Campbell" and his official designation, residence, &c. are printed, are wholly immaterial. If he adopted this as his own, it would be quite as effective for all legal purposes, as if written with his own hand. If then, there exists the harmony supposed, between the notice and the protest, the inference must be, that the person whose name appears to the notice, is the notary who was authorized to demand payment of the bills, and of consequence the agent of the holder to give notice of their dishonor.

If the notice had been signed by a stranger representing himself as the agent of the holder of the bills, it would doubtless have been sufficient, if in truth he was his agent, although the defendant may not have been informed that such was his character. Here it was subscribed by a notary, who if he protested the bills was authorized to give notice of their dishonor. The protest by him would be evidence of his authority, and make the notice sufficient without the aid of a notarial seal, or other assistant proof.

It is usual for the holder only to give notice to the person from whom he immediately received the bill or note; especially if he is ignorant of the residence of the other parties. The rule is settled, says Chitty—(Treat. on Bills, 520–1)—"that each party to a bill or note, whether by indorsement or mere delivery, has in all cases until the day after he has received notice, to give or forward notice to his prior indorser, and so on till the notice has reached the drawer. And this rule is so strongly fixed, that a party receiving notice of the dishonor of a bill, need not give or forward notice to the party immediately before him, till the next post after the day on which he himself received notice, although he might easily have forwarded it on that day, and although there is no post on the day follow-

ing." It is conceded that the law is as here stated, but it is denied that the notary in New York was authorized to send notices to the plaintiff to be addressed to the defendant or other parties, or that the notary could give notice to the defendant by letter, otherwise than by the direct course of mail.

The record does not show that the plaintiff had any interest in the bill either as principal or agent at the time of its dishonor, and it cannot be said that the notices were properly sent to it, or that it was authorized to give notice to any party to the bills. Perhaps the protest may impart the necessary information on this point. But if the plaintiff was a party subsequent to the defendant, it cannot be questioned that it was competent for the notary protesting the bills to send notices to the Branch Bank. Whitman & Hubbard v. The Farmers' Bank of Chattahoochie, 8 Porter's Rep. 258, impliedly admits that such is the law. Carson v. The Bank of Alabama, 4 Ala. Rep. 148, proceeds upon the same hypothesis; for a notice thus sent in that case, had been deposited in the post office, and no objection was made to its sufficiency. [See also Foster v. McDonald, 5 Ala. Rep. 376.]

In Freeman's Bank v. Perkins, 18 Maine Rep. 292, the Court say, where the cashier of a Bank is resorted to, by the proprietor of a bill to obtain payment, "he is to be considered as it respects the time of causing a protest to be made, and of giving notice, as a distinct holder or party to the instrument." It is however intimated that if either the collecting agent or notary know where the party to be charged resides, notice should be sent directly to him; but if they are ignorant of his residence, the notice may with propriety be directed to the holder of the paper. The Court further held, that it was competent for the holder to send a notice of his own by the mail of the succeeding day; but where he sent the notice prepared and transmitted to him by the notary, the indorser was adjudged to be discharged, because such notice was not forwarded by a mail that left two hours after its receipt. This decision is exceedingly unsatisfactory. With the first point determined by it, we have now nothing to do; the second, we have seen, is not in harmony with our own adjudications. The third, is sustained by no authority, which has ever come under our notice. In

distinguishing between a notice prepared by the notary himself and one made out by the holder of paper, the Court have acted upon reasoning too refined to be made the basis of a legal principle; and we cannot therefore recognize it as authoritative.

Under the circumstances of this case, there was no necessity for referring to the jury the sufficiency of the notice to identify the bill. It identified with reasonable certainty both the bills by stating the name of the drawee and their amounts; and there was no evidence showing that the defendant had drawn any other bills for the same or a different amount on Dickinson. The genuineness of the notice conceded, the identification of the bill was a necessary conclusion. The case of the Ontario Bank v. Petrie, 3 Wend. Rep. 456, is unlike the present. There the note was due on Sunday, the 31st of August, the demand was made on Saturday, the 30th, and notice sent by the first mail. The notice dated the *thirtieth* states payment was demanded *last* evening instead of this evening; and the Court said that the Circuit Judge "was right in submitting to the jury the question whether the defendant was misled." In that case it could not be assumed from the notice, that the defendant was not misled, and hence the propriety of directing the inquiry of the jury to the point. But here under the proof there was no ambiguity, and the Court might very well have informed the jury, that if they found the other facts in respect to the notice in favor of the plaintiffs, the notice itself in the absence of countervailing proof, sufficiently identified the bill. This view does not at all trench upon the powers of the jury. It is but the common practice of instructing a jury what are the legal conclusions from established facts. In cases where there is room for doubt as to what construction should be placed upon a written notice, and what the party to whom it was addressed should understand by it, the question should be referred to the jury.

By the third section of the act creating the Branch of the State Bank at Mobile, it is provided, that the president of that institution shall always be one of the board for the transaction of business, " except in cases of sickness or necessary absence, in which event the board may appoint a president *pro tempore*." In Bancroft v. The Branch Bank at Mobile, 1 Ala.

Rep. N. S. 230, we held, that the certificate of the president
*pro tem.*, was competent to show that a note sought to be re-
covered by notice and motion under the charter, was *bona fide*
the property of the Bank. In Roberts, et al. v. The State
Bank, 9 Porter's Rep. 312, it was decided that it was not ne-
cessary, that the certificate of the president elected by the Le-
gislature should be authenticated by the seal of the corpora-
tion; that the Court would judicially recognize his official cha-
racter, and intend in the absence of all proof on the point that
his signature was genuine. This decision was made upon the
ground that the President was *quasi* a public officer, and the
evidence of his election and qualification was shown by the ar-
chives of the State. But in Crawford v. The P. & M. Bank
of Mobile, at the last term, we considered, that as the State
had no interest in that institution, and no agency in electing its
officers, it could not be judicially known that certain persons
who had acted as president and commissioner, were in point
of fact such officers; and that their official character should be
shown by proof.

Neither of the cases cited is like the present in its facts. In
Bancroft's case, the official character of the president *pro tem.*
was impliedly, if not expressly conceded. In Robert's case,
the president derived his office from the Legislature; and in the
last, the Legislature had no interest in the corporation or any-
thing to do with the election of its officers. Here we are re-
quired to know that an individual of the same name who
makes the certificate was elected a director, but we are not in-
formed that he was president *pro tem.* when he made the cer-
tificate. There can be no evidence of the fact in any of the
public offices. Under these circumstances it cannot be intend-
ed, that he was authorized to exercise the character assumed.
His act does not prove that he had the sanction of the board
to sustain him, and as this was indispensable to its regularity,
it should have been established by proof. The most liberal
presumption in favor of what has been done by persons in
public stations would not allow such proof to be dispensed with.

This closes the view, which the argument for the plaintiff
in error required us to take of this cause—the result is, that the
judgment of the Circuit Court is reversed and the cause re-
manded.

We observe that the clerk of the Circuit Court has improperly sent up some of the original papers with the transcript, which will be indispensable upon another trial below: the clerk of this Court will therefore deliver them to the clerk of the Circuit Court, the attorney of the Bank, or the order of either of them, upon exact copies being substituted and attached to the transcript.