CARSON v. The BANK OF THE STATE OF ALABAMA

1. In a demurrer to evidence it was stated that the Cashier and assistant Cashier deposed that they believed, and had no doubt, that notice of nonpayment of a bill was deposited in the post office, directed to the drawer; that their belief did not arise from any recollection of the fact, as connected with the bill sued on, but from the course of business of the Bank—it was held that from this evidence a jury might properly infer that the usual course of business of the Bank furnished sufficient facts to warrant this belief; and if the party against whom such evidence is offered omits to inquire what this course of business is, he will not afterwards be heard in asserting that nothing is proved by it.

2. When the drawer resides in the vicinity of a town or city, a letter giving notice of nonpayment deposited in the post office, and directed to him at the same town or city where the letter is deposited, is sufficient to charge him.

WRIT of Error to the County Court of Tuscaloosa County.

This action was commenced as a summary proceeding, by motion under the statute in which the Bank recovered the amount of a bill of exchange, dated at Tuscaloosa, and payable in New Orleans, from Carson, as its drawer.

The judgment of the Court was given on a demurrer to evidence, and the proof is admitted to be sufficient, except so far as it relates to the notice of nonpayment, supposed to have been given to the defendant.

The proof in connection with this matter as disclosed by the demurrer was, firstly, the protest of the bill under the hand and seal of a notary—but the protest contains no statement whatever with respect to notice. Secondly, of the testimony of two witnesses, Hawn and Williams—the first of whom deposed that at the maturity of the bill in suit, a number of other bills

besides were protested; that he received a package of notices of protest from the notary at New Orleans, and handed them to Williams, who was assistant Cashier, to be forwarded by mail to the parties; that he could not say positively that notices had been received on the bill in suit, or that such were put into the mail at New Orleans on the day, or the day after, the bill was protested, but he believed they had been, and that they had been received here in due course of mail, which was about seven or eight days; which is the usual time of the arrival of the mail from that place, and forwarded immediately to the indorsers; that his conviction of these facts arose, not from any recollection of the facts with respect to the particular bill in suit, but from the course of business in the Bank.

Williams, the other witness, deposed that he was the assistant Cashier at the time of the maturity of the bill sued on, that he recollected a large package of notices of protest had come to the Bank of bills protested, [at the same time of] the maturity of the bill sued on; that he had no doubt of having put the notice of the protest in this case into the post office at Tuscaloosa, directed to Carson and to Ball, (the latter is a subsequent endorser of the same bill,) at Tuscaloosa ; that he did not say so from any distinct recollection of the fact, but that such was the course of business in Bank, and he had no doubt of it; that Carson lived about five miles from Tuscaloosa, and he believed Ball and his family were then residing there, although he did not know such to be the fact.

Peck and Cochran, for the plaintiff in error, made two points:

1. That the evidence leads to no conclusion that notice was ever given. No fact is stated from which it can be reasonably inferred to have been sent by the Notary to Hawn, the Cashier. It may be conceded that Hawn and Williams' testimony might raise a reasonable presumption that they discharged their duty, but the true question was as to the performance of an act by the Notary in New Orleans.

2. That if notice was put in the post office at Tuscaloosa, directed to Carson, this was not sufficient to charge him without showing that he received it.

The post office can only be legitimately used for the trans-

mission of letters from one place to another, and no act of Congress or other competent authority imposes the duty upon the Post Master to distribute letters directed to the same place. A special messenger should be employed in such a case as this, to give personal notice. [Stevenson v. Primrose, 8 Porter, 157; Ireland v. Kipp, 10 John. 490; S. C. 11 ib. 231; Bryden v. Bryden, ib. 187; Taylor v. Bryden, 8 ib. 173; Aymer v. Beers, 7 Cowan, 705; Sirk v. Cunningham, ib. 395; Cuyler v. Wells, 4 Wend. 398.

PORTER, contra, argued that a jury might properly have inferred that the course of proceeding by the Bank, through its officers, was to ascertain at the return of bills, that notice to charge remote parties was given. The demurrer admits all that a jury can infer. [4 Wheeler's C. L. 340, 342; 1 Hill N. Y. 470; 11 Wheat. 171.] As to the sufficiency of the notice he cited 15 Wend. 364; 4 Wend. 328; 11 John. 231; 2 Ala. Rep. 565; 1 Hill N. Y. 11, 263.

GOLDTHWAITE, J.—1. At first we were strongly inclined to think that the record did not disclose any evidence which could properly warrant a jury in coming to the conclusion that notice of the nonpayment of this bill was sent from New Orleans to Tuscaloosa, but subsequent examination and reflection has satisfied us our first impressions were incorrect.

Upon a demurrer to evidence, the Court does not stand in the place of a jury, to render such a judgment as the jury ought to have done, but to render one against the defendant if the jury, from the evidence, could legally have done so.— [Young v. Foster, 7 Porter, 420.]

We will then examine the case upon the testimony, to see if it would have been unreasonable for the jury to infer the fact of notice from the other facts stated. The protest was proved, or rather it proved itself; a large package of notices of protests of bills protested at the same time was received by the Bank, in due course of mail, and these were handed by the Cashier to the assistant Cashier, who immediately put them in the post office. Both the witnesses state they have no doubt of the fact that one of these notices was for the defendant, and Williams adds that it was directed to him at Tuscaloosa. Neither

had any particular recollection of any notice, as particularly applicable to this bill, but both derived the impression, and their belief was founded *on the course of business in the Bank.* What this course of business was we do not know, nor did the jury, but a question from the plaintiff's counsel to either witness, would probably have elicited the fullest information.

It may be, and it is not improbable, unless we admit the hypothesis, that matters of this importance are most loosely attended to, that the Cashier, or his assistant, on the return of bills, examines the correspondence, to be certain that the necessary steps are taken to charge remote parties.   Such a course of business, if pursued, would have furnished sufficient evidence for the presumption that what was usual to be done in all cases, was not omitted in the particular one.    This is the usual course of evidence by a large class of persons, such as public officers, notaries and clerks.    Where the business performed by them is of great extent, it is highly improbable from the nature of things, that any precise remembrance shall exist of one fact, which has nothing to distinguish it from a multitude of others of the same nature—hence it is that evidence of this general character is admissible.

Indeed the practice, or mode of examination of a witness of this description in Court, is sufficient to show that inferences may be drawn by the jury from the omission of either party to ask of the witness, before the jury, an explanation of a general matter.    One illustration will suffice : a Notary states that he has no remembrance or recollection of giving a notice to a named person, but he has no doubt from his general course of business that he did so.    It ought not for a moment to be tolerated that the party against whom this evidence is sought to be used, shall omit to inquire of the witness what this course of business is, and then insist that nothing is proven.    There could be no jury empannelled that would not render a verdict on such evidence, and their inference would be perfectly legitimate and proper.

In the present case, if a sifting examination had taken place as to the course of business in the Bank, certain results must have flowed from it.    It would either have appeared that the mode was so accurate as to produce belief, and leave no doubt, as it seems to have done upon the minds of the witnesses, or

it would have shown such a loose and inaccurate practice, as could have no tendency either to convince them or the jury of any fact respecting the notice.

Upon the entire case then, we conclude, as the jury in all probability would have done, that a notice was sent to the defendant, through the post office at Tuscaloosa.

2. This, however, is insisted not to have been the proper mode to charge him, unless the actual receipt of notice by him was shown, which is not pretended. One of the principal arguments urged to sustain this view is, that the deposite of such a notification in the post office, imposed no duties on the Post Master with respect to it. This assumption is unfounded, because the 36th section of the act of Congress of the 3d March, 1825, provides that "for every letter lodged at any post office not to be carried by post, but to be delivered at the place where it is so lodged, the Post Master shall receive one cent of the person to whom it shall be delivered." In the regulations of the post office these are called box letters. With respect to the general law upon the subject of giving notice through the post office, it is entirely of mercantile origin, and is sufficiently elastic.

In the case of Stephenson v. Primrose, [8 Porter, 155,] it was held by this Court, that where the parties all resided in the same city, notice could not be given through the medium of the post office, there being no evidence in that case to show its receipt by the person sought to be charged.

The same principle seems to govern the case of Ireland v. Kipp, [10 John 490.] The rule in England seems to be different, at least so far as the city of London is concerned, for there notice sent by the two-penny post is held to be sufficient, whether the parties reside near or at a distance from each other. [Chitty on Bills, 504, and cases there cited; 1 Camp. 246; 9 East 347; 2 Camp. 208, 633.] It is evident that neither the case of Stephenson v. Primrose or Ireland v. Kipp, warrant the exclusion of the post as a means of giving notice, when the person sought to be charged does not reside in the same town or city with the holder—to require notices in such cases as this, and those similar to it, to be given personally would in all cases involve the expenses of a special messenger. Under the operation of such a rule as is contended for, the

Bank might, and frequently would, employ more messengers than clerks. We can see no reason for declaring that notice may not be given through the post office, whenever the party sought to be charged does not reside in the same town or city with the holder—in all such cases it is sufficient to show the notice sent by that mode, although it is directed to the person sought to be charged, at the same post office where it is deposited.

Our conclusion is that the judgment on the demurrer is free from error, and it is affirmed.