Milton v. Rowland.

## MILTON v. ROWLAND.

1. Where a deposition is supposed to be irregularly taken, the party may re-take under an order of court, and that even when the cause is called for trial, and the other party has announced himself ready for trial, but is unwilling to waive exceptions to the deposition.

2. Although the omission to notify the opposite party in writing of the time and place of taking the deposition, may be good cause to suppress it, if the fact of notice is denied, yet a verbal notice is sufficient, if the fact of notice is not denied.

3. It is no error affecting the judgment of a cause, that the court for its own information, makes inquiries of a physician as to the extent of knowledge usually possessed by midwives.

4. When the answer of a witness in a deposition asserts that her experience in the particular avocation of a midwife enables her to judge of particular diseases in females, and the opposite party omits to test her knowledge or experience by a cross-examination—*Quere*, if the objection will lie to answers stating her opinions and belief.

5. Any person may speak of the existence of disease in another, when the disease is perceptible by the senses.

6. An exception to a deposition, to each answer, and to each sentence of each answer, amounts to nothing more than a general exception to the deposition.

7. When there is a warranty of a personal chattel, the law does not impose on the buyer the duty to return it, if the warranty is untrue, but he is allowed to keep the chattel and sue for the breach of warranty.

Milton v. Rowland.

8. When the purchaser of a slave, warranted sound, subsequently sells it for an advanced price, the expenses and trouble he has been at does not fur_ nish the *sole* measure of damages for the breach of warranty. The price subsequently obtained, at a fair sale, is a circumstance which may go to the jury as one of the means to ascertain the value of the chattel.

9. When the question raised on the evidence is the breach of a warranty, a charge in reference to the law arising out of a fraud is abstract.

10. Error assigned on charges which were not excepted to at the trial, cannot be examined in this court.

Error to the County Court of Benton.

ASSUMPSIT by Milton, payee of a promissory note, against Rowland, its maker.

At the trial term, and previous to the call of the cause, the defendant made affidavit that one Mrs. Stoner, residing in the town of Jacksonville, was a material witness for him at the trial. On the same day of making the affidavit, the defendant gave a written notice to the plaintiff, that he should proceed, at 12 A. M. of next day, to take the testimony of this witness, at the house of Michael Stoner, in the town of Jacksonville, before certain named commissioners, or either of them. At the time and place designated, the plaintiff appeared, for the purpose of cross-examining the witness, but the defendant stopped the examination, and said he would not proceed unless the plaintiff would waive all exceptions to the commission. This the plaintiff refused, and the commissioner left the place, as well as the attorneys for both parties—the defendant's attorney informing the plaintiff he would get a new commission, and return immediately to take the deposition. Immediately afterwards a new commission was issued, and the defendant proceeded to take the deposition of the witness, without the plaintiff being present. No notice was given other than as above stated.

When the cause was called for trial, the defendant filed the deposition thus taken, and obtained an order to publish it, and this order was made after the plaintiff had announced himself ready for trial. The defendant asked the court to postpone the trial to allow him to retake the deposition, or to continue the cause, inasmuch as the plaintiff refused to

waive all objections to the commission. The court thereupon made an order to retake the deposition, and a new commission issued. The witness resided less than half a mile from the court house, and the court directed the defendant to inform the plaintiff when the commissioner should start for the house of the witness, and that would be sufficient. The defendant gave the plaintiff a verbal notice, that the deposition would be taken the next morning, at 7 o'clock. The deposition was taken without the presence of plaintiff, and without any other notice than that just stated. The certificate of the commissioner shows the commission was executed between the hours of seven and nine o'clock of the day indicated in the verbal notice, which was the day after that indicated in the written notice first before stated.

The plaintiff objected to the order to retake the deposition, and also to the notice, as being illegal, insufficient, and untimely—as made during the session of court, and after the cause was called for trial.

He also objected to the deposition, that it was taken on a different day and hour from that designated in the first notice. The objections were all overruled, and the deposition read.

Several questions were propounded on the part of the defendant, the object of which was to elicit her knowledge, whether a certain female slave and child were diseased. She answered, that she was called in her capacity of midwife—which she had pursued for twenty years—to visit a female slave named Harriet, in the possession of the defendant, and found her, on the 10th or 12 of February, 1843, diseased with the *gonorrhœa* in its last stages. The child was also diseased in consequence of sucking its mother's milk. She also stated, that her experience enables her to judge of this disease. She also answered, the slave was affected at the same time with *prolapsus uteri*, brought on, as the witness believed, because of the former disease, and in consequence of taking medicines for it which weakened the system.

The plaintiff objected to each of the answers of the witness, and to each sentence of each answer, but the court allowed them to be read.

When objection was made to these answers, the court, for

its own information, asked several questions of a physician, who answered, the practice of midwivery did not necessarily involve the knowledge, or the ability to judge of the existence of *gonorrhœa* or *prolapsus uteri*, but a midwife, from her frequent association with weak and delicate women, would be likely to recognize the latter disease, particularly if she made a personal examination. The plaintiff objected to this examination, but the court overruled him.

The court then decided the answers, so far as they spoke of the disease first named, were incompetent evidence, but admissible as to the other. Afterwards, by agreement between the parties, the evidence of the witness as to both diseases was read to the jury, the plaintiff to have the benefit of his exception, if either was illegal. There was no proof of Mrs. Stoner's medical skill, other than contained in the deposition itself.

The defendant then offered evidence tending to show the note on which he was sued was given in part payment of the price of the female slave and her child sold to him by the plaintiff, and warranted sound, on the 24th January, 1843. It was also in evidence, that the slave then appeared to be sound, and that two months afterwards she appeared to be unsound, but the defendant then sold the slave, without the child, for $600. No proof was made of any offer by the defendant to return the slave and rescind the contract. There was also evidence tending to show the slave was sound and healthy from her infancy up to the time of sale; also, that she was sick a short time after the sale, and that the plaintiff, at the sale, represented her to be *enceinte*.

The plaintiff asked the court to charge the jury—

1. That the defendant could not avoid the payment of the purchase money, *entirely*, unless the slaves were tendered back.

2. That if the note given by the defendant for the slave, and the defendant within three months afterwards, sold her for an advance, although the slave was unsound, yet the only reduction on the note to which he was entitled, was for the expense and trouble incurred in consequence of her disease.

3. That the defendant was not entitled to a greater reduc-

tion on the note, than the amount of injury sustained by him in consequence of the sickness of the slave.

4. That when the vendee does not rescind a contract, upon the discovery that the vendor has committed a fraud, he cannot avoid the payment of the purchase money *in toto*.

The 1st, 2d and 4th charges were refused, on the ground they were abstract, and the 3d given, with the qualification that the amount of injury sustained by the defendant, was the difference between the value of the slave if sound, and her value in the condition she was at the time of the defendant's purchase.

The plaintiff excepted to the several rulings of the court, and the bill of exceptions sets out the charges actually given to the jury, but these were not excepted to.

The assignment of errors opens all the questions mooted at the trial, and also questions the correctness of the charges given.

T. A. WALKER, for the defendant in error.

S. F. RICE, contra.

GOLDTHWAITE, J.—1. The only material question growing out of the circumstances attendant upon this deposition is, as to the authority of the court to make the order under which it was taken. If, as it is fair here to assume, the defendant had ascertained the deposition in the first instance, was irregularly taken, there is no reason why he should wait until the objection was sprung by his adversary. All that a liberal practice should require, or a strict one demand, is, that the opposite party should not be put to expense, and trouble, of a new examination, if willing to abide by the first. Having refused to waive objections to the deposition, or rather commission, as it was, the court had the same power to direct it to be taken over as it had in the first instance. And this is the sum and substance of what was done.

2. Some stress is laid on the fact, that the notice of the retaking of the deposition was merely verbal. The statutes do not prescribe the notice shall be in writing, though the usual practice is for it to be so ; but however well the omission to give the notice in writing might justify a court in

Milton v. Rowland.

suppressing a deposition, when the fact of notice is denied by the opposite party, we think the form or manner of notice is of no importance, when one in point of fact is proved, and not denied on the other side. The statutes evidently leave the time, as well as the manner of notice, a matter of discretion with the court or officer allowing the commission. [Dig. 164, § 1, 2; 167, § 15, 16.] Though it is possible this discretion does not extend beyond a personal notice to the party or his attorney. [McEwen v. Morgan, 1 Stewart, 190.]

3. The fact that the court for its own information, and probably to guide its own judgment, made inquiries of a physician as to the extent of information usually possessed by those practising as midwives, is not a matter which affects the case. If the judgment on the point presented is right, it matters little how the information was got at, and if wrong, the medium of information will not prevent the reversal.

4. It is insisted however, that the answers of the witness must be considered as giving her opinion only, that the death of the child was caused by sucking its mother's milk, and that the *opinions* only of persons of skill in the particular matter are evidence. It will be seen the witness was questioned as to her experience in such matters, and very possibly a cross examination on this point would have rendered it certain that she either did, or did not, possess the skill and science to authorize her opinions to be received. It would be going very far to exclude testimony on the ground that a particular fact was not proved when the examination itself was of a general matter which presupposed the information or skill to speak of it. [See Carson v. Bank, 4 Ala. Rep. 148.]

5. But however the rule is to be applied in cases generally, we think the party here is not entitled to raise the question, as it was not raised in the court below. The exception taken at the trial, so far as any thing is specific, is to the allowing the witness to speak of the existence in the slave, of particular diseases. Now we apprehend the most ignorant witness may be permitted to state the *fact* of disease, when open to the perception of the senses, though he

93

might not be so skillful in the cause, or causes, as to enable him to give his opinion as evidence to govern a jury. The question raised at the trial was, whether what the witness said as to the slave's being afflicted with particular diseases, was admissible, but is now turned into one as to the capacity of the witness to speak of the causes of the child's death. We are clear there was no error in admitting the answers as to the diseases, and as to the opinion, if the question had been raised at the trial, that might have been examined into further, or rejected entirely.

6. If it is contended the exception taken is sufficiently broad to cover every sentence of the answer, we reply that this general mode of reserving a matter will not be sufficient. An exception to each interrogatory, or answer, and to each sentence of the same, is no more specific than one made in gross to the entire deposition. Is the court to stop and criticise and scrutinize a deposition when such an exception as this is taken? The object of an exception should be to call the attention of the court to some specified defect in the proceedings, so that a considerate judgment may be given upon it, and that the opposite party, if necessary, may waive it if improper, or sustain the position if necessary by other evidence. When sufficient information for this is not afforded, there is no merit in the exception.

7. Coming then to the charges which the court refused to give, at the instance of the plaintiff, the first may be disposed of, with the brief remark, that when there is a warranty of a personal chattel, the law does not impose on the buyer the duty to return it if the warranty is untrue; but he is allowed to keep the chattel and sue for the breach of warranty. [Stephens' N. P. 1295, and cases there cited.] Such being the rule, there was no error in refusing this charge.

8. The second charge involves to some extent the same question which arises out of the qualification of the third. It is as to the true measure of damages for the breach of warranty of the slave under the circumstances in proof. In the recent case of Anderson & Willis v. Dudley, at this term, we had occasion to consider this question, and a majority of the court then held the measure of damages to be the difference between the value of the article as warranted to be, and its

value in the condition it was at the time of the warranty. The qualification of the third charge is in accordance with that decision, but it is supposed that when the thing is afterwards sold at the same or a greater price than was paid for it, the only measure of damages is, the expense and trouble necessary to bring it to this condition.   The case of Hogan v. Thorington, 8 Porter, 428, is cited as sustaining this distinction. The question there was, not whether the expenses, &c. were the only damages which could be allowed, but whether they were recoverable at all.   We then said,  " it is not for the warrantor to object, that the purchaser has been amply compensated by the increased price at which he sold the slave.   This resulted, doubtless, from the demand, and in consequence of the enhanced value of such property in market, at the two periods of the purchase and sale.   The unsoundness of the slave when the warrantor parted with her, contributed nothing to such a result, she would have been sold by the purchaser for as much, if she had then been sound, and no expenditure of money by him would have been necessary.   It is then clear the purchaser has sustained a loss by the breach of warranty, or rather has been prevented from realizing the profit he was entitled to, by so much as the sums paid for medical attendance diminished it."  From this quotation it will be apparent, the court then considered the purchaser was entitled to recover as damages, the value between the thing as it was, and its value as represented to be, and that the price afterwards obtained was a criterion by which the difference in value might be estimated.   The same distinction was held by Lord Denman in Cox v. Walker, 6 A. & E. 523.]   The price at a fair subsequent resale is then not conclusive as furnishing the rule, though it certainly is a circumstance which may be given in evidence to the jury, as one of the means to ascertain the value of the chattel.   Although it would have been more proper to have explained the influence that the subsequent sale had on the cause in ascertaining the amount of damages sustained by the breach of warranty, we cannot say there was error in refusing the charge as requested, inasmuch as it assumes the only reduction which the defendant was entitled to, was a

740 **ALABAMA.**

sum sufficient to cover the expenses and trouble in healing the slave.

9. The last charge was properly refused, if for no other reason, on that assigned by the court. There was no evidence of fraud in the sale, as distinct from the warranty, and we have already stated the rule, that in such cases the purchaser is not bound to return the chattels. The case of Barnett v. Stanton, 2 Ala. Rep. 181, has no application to this, under the circumstances in proof, for it does not appear, the defendant insisted there was a rescission of the contract.

10. Although errors have been assigned on the charges which the court gave, these cannot be revised here, because no exception seems to have been taken in this connection.

We have thus examined the entire case, and find nothing to warrant the reversal of the judgment.

Judgment affirmed.

COLLIER, C. J.—I concur in affirming the judgment, but refer to my opinion in Willis & Robertson v. Dudley, for what I consider a correct view of Hogan v. Thorington.