## BRYAN *vs.* THE STATE.

1. The object of a demurrer to evidence is, not to substitute the judge for the jury as a trier of the facts, but to ascertain the law upon an admitted state of facts; and its effect, when issue is joined, is to admit every fact which the testimony tends to establish.
2. Under an indictment for gaming, (Code, § 3243,) upon demurrer to the evidence, the defendant may be convicted on proof of his having played a game of "ramps" in a store-house where spirituous liquors were at the time retailed.

APPEAL from the Circuit Court of Pickens.
Tried before the Hon. GEO. D. SHORTRIDGE.

JESSE W. BRYAN, the appellant, was indicted at the Fall term, 1854, of the Circuit Court of Pickens, for gaming; the indictment charging, in the alternative, all the offences enumerated in section 3243 of the Code. On the trial, the defendant, having introduced no evidence himself, demurred to the evidence adduced in behalf of the State; and the State having joined in the demurrer, the court held the evidence sufficient to support a conviction, and judgment was rendered accordingly. The evidence, as set out in the record, was as follows:

"The defendant, within twelve months before the finding of the indictment, played at a game called "ramps," in a store-house where spirituous liquors were at the time retailed, in the county of Pickens. The game was played with a set of dominoes, consisting of twenty-eight pieces; the dominoes are pieces of bone, numbered from one to six, besides one suit being blank; there are seven suits,—blank, aces, deuces, &c.; and each suit is subdivided,—as, ace blank, ace deuce, &c. The game is played by turning the numbered sides of the pieces flat on the table; the players then turn over one each, and the player turning over the one which has the highest number of spots upon it wins the trump; the faces of these pieces are then turned down again, and all the pieces are then shuffled; each player then draws five pieces, and one of them turns over another piece as a trump for the player who won the trump; the player who won the trump may then discard

5

one of the five pieces he drew, and take the trump in lieu of it, or he may discard the trump and his hand besides, draw six more pieces, and discard one; any other player may discard the five pieces he drew, and draw six more and discard one. In playing, each player must follow suit, if he can; and if he cannot, he may trump. Any player who fails to take a trick is "ramped." In making the game, the players fix upon a number (usually fifteen) for each. If only two are playing, the party who does not take a trick is "ramped," by which five is added to the fifteen, and five taken from the fifteen of the other player; and so on, until one player or the other gets out—that is, reduces the fifteen with which he started to nothing. The stake is a treat, or cigars, from the party who is "ramped." No money was bet by the defendant; but the game is a mixed game of skill and chance, and money may be won and lost at it. There is no game played with dice similar to the game of "ramps." In "ramps," the trump is played out by the person who won it; but the winner of the trump is neither obliged to play the five pieces he drew, nor draw more: he may throw up his hand altogether, and let the other players go on; if he does so, he cannot be "ramped" on that hand. The only games of cards in which the trump is played out, are eucre and whist.

"The State then introduced another witness, who testified, that a game usually played with cards could be played with dominoes; that he had, at the instance of the court and counsel, on this forenoon, in the presence of the jury who tried a similar case to the one at bar, played said game, called "thirteen-and-the-odd," both with cards and with dominoes, with a like result, and on the same principle. He further testified, that the game of "ramps" could be played with cards, by taking the twenty-eight cards from ace to seven inclusive of each suit; and, at the instance of the court and counsel, played with another the said game of "ramps," first with cards, and then with dominoes, in the presence of the jury; and witness testified, that the mode of procedure, and the result obtained, were the same in each instance; further, that he had never known or heard of a game of cards called "ramps," nor a game played with dominoes called "thirteen-and-the-odd," except the two games played as above stated for the purpose of illus-

tration ; that if there had been such games, he thought he would have known or heard of them ; that in playing "ramps" with dominoes for a treat, the game was not ended until each player but one had made his points, and the last one out paid the treat; but in playing said game for money, when one player had made his points, he took all the stakes, and the game ended ; and that he had often seen the game played for money ; by 'points' the witness means the score of fifteen, or other number determined on by the players, the winning of which was necessary to make any player win the game, as far as his hand was concerned."

This being all the evidence, the court held it sufficient to convict the defendant, and therefore overruled the demurrer.

No errors are assigned on the record.

T. REAVIS and S. F. HALE, for the appellant.

M. A. BALDWIN, Attorney General, *contra.*

GOLDTHWAITE, J.—The only question presented by the record arises upon the action of the court on the demurrer to the evidence. The object of a demurrer to evidence is not, as has sometimes been supposed, to substitute the judge in the place of the jury as a trier of the facts ; for, if that was the case, it would destroy one of the chief characteristics of the common law, which separated, by a clear and distinct line, the duties of the judge and jury,—giving to the one the determination of the facts, and confining the other to questions of law. The office of a demurrer to evidence is precisely the same as a demurrer to the pleading : each is intended for the purpose of ascertaining the law upon a particular state of the facts, but the proceedings are necessarily different. In the one case, the facts are alleged in writing in the pleading ; in the other, the evidence is submitted to the jury, and if it does not tend to establish the issue, the objection goes to its admissibility. If admissible, the jury are the sole judges of the weight to be given it, and they, and they alone, are to determine how far it conduces to the proof of the facts. If the defendant believes that the facts which the evidence conduces to prove would not be sufficient to maintain the action in a civil case, or make out the offence in a criminal prosecution,

he may call upon the court to declare the law upon the facts, and this he does by a demurrer to the evidence. If, however, the evidence is loose, uncertain, contradictory, or circumstantial, he cannot call upon the court to draw the inferences, or to determine how far it goes to establish the fact: these are matters for the jury. If he wishes, therefore, in a case of that kind, to submit the law to the court, he must admit every fact which the testimony tends to prove, and this is the effect of the demurrer if issue is joined. This is the whole theory of the demurrer to evidence, and hence we held in Young v. Foster, 7 Porter 420, that the court does not in that proceeding stand in the place of a jury to render such judgment as the jury ought to have done, but to render such judgment as the jury from the evidence could have rendered; and this principle is re-affirmed in Carson v. The Bank, 4 Ala. 148; see, also, Duerhagen v. United States Insurance Co., 2 S. & R. 185; Maus v. Montgomery, 11 ib. 329.

Applying this principle to the case before us, there is no difficulty. The record shows that every ingredient in the offence charged was clearly established, except the fact as to whether the game was played with a substitute or device for cards; and under the rule we have adverted to, if there was any evidence tending to prove that fact, on demurrer we are bound to consider the fact established. The record discloses, that the game, although played with dominoes, could as well be played with cards,—that the dominoes are shuffled, a trump is made, and the players must follow suit if they can, and if not, are allowed to trump,—tricks are taken, and points made. Here, then, we have a game which can be played with cards, and is played on the same principles which govern some games in cards, and in which the same cant phrases and terms are made use of. We cannot say with positive certainty, upon this evidence, that the dominoes were used by the appellant as a device or substitute for cards, but we are very clear that the evidence we have stated tends to establish that fact, and there was for that reason no error in the judgment of the court.

Judgment affirmed.