JUDGE STITES
delivered the opinion oe the court.
This was an action by Everett against Bondurant as the drawer of the following bill of exchange:
“ $4,000. Mt. Sterling, July 1st, 1857.
“ Sixty days after date pay to the order of Charles Nelson, four thousand dollars at the banking house of Hoffman, Barnes & Co., Mt. Sterling, for value received.
“Joseph Bondurant.
“ To R. Apperson, Mt. Sterling, Ky.”
The bill was accepted by Apperson, and indorsed by Nelson to Chenoweth & Co., of Cincinnati, and by them indorsed in blank and forwarded to Hoffman, Barnes & Co., at Mt. Sterling for collection. At maturity it was regularly protested for non-payment, and Everett, who subsequently became the holder, brought his suit against the drawer.
The law and facts were submitted to the court below, and a judgment having been rendered against Bondurant, he has appealed.
The case turns upon the question of notice.
It appears that Chenoweth & Co. resided in Cincinnati— Everett in Mt. Sterling, and Bondurant between two and three miles of the latter place.
The notary proved that on the day the bill was protested he, by direction of Everett, the agent of Chenoweth & Co., inclosed by mail, postage paid, copies of protest and notice to Cheno-weth & Co., at Cincinnati, and also in the same envelop notices directed to Nelson and Bondurant. He also proved that he placed a notice of the protest in the post-office at Mt. Sterling addressed to Bondurant at that place; and that, at the date of the protest, Hoffman, Barnes & Co. were the holders of the bill by blank indorsement from Chenoweth & Co., which blank was subsequently filled up to Everett.
It was likewise proved that Mt. Sterling was Bondurant’s post-office, at which he received his mail matter, and the nearest *660 office to him; and that he was usually in Mt. Sterling every week, sometimes once, and as often as twice or thrice, and usually called in person for his mail, but sometimes sent for it by others.
It further appeared that four days was the usual mail time required for a notice to go from Mt. Sterling to Cincinnati and return to the former place.
The sufficiency of notice to Bondurant is questioned, because it was not personal — he being, as is contended, entitled to personal notice in consequence of his residence near to the place of dishonor.
It seems to be conceded that if notice had been sent by mail from Cincinnati in due time, directed to Bondurant, at Mt. Sterling, it would have been sufficient — his post-office being at that point. But the ground is, that inasmuch as the holder failed to adopt that, the usual mode, and undertook to dispense with it by giving notice in a different way, it devolved upon him, because of the nearness of the drawer’s residence to the place of dishonor, to give personal notice.
In support of this view we are referred to Story on Bills of Exchange, (sec. 382,) and the case of The Farmers’ Bank vs. Butler, (3 Littell, 498.) The case in Littell seems to be an adjudication directly in point, and supported, as it appeared to be, by modern authority of such note, was regarded on a former hearing as conclusive of this case.
An examination of the more modern adjudications of our sister states, and of the supreme court of the United States, has satisfied us that the rule is now different; and that, where the party sought to be. charged as drawer or indorser lives near to, but not in or at, the place of dishonor, and the post-office at that point is the office at which he usually receives his letters, or the nearest office to his residence, notice may be given him by letter through such office. (1 Peters, 578; 2 Peters, 543; 8 Watts & Serg., 14; 4 Ala. Rep., 148; 8 La. Annual Rep., 170-71; 9 La. Annual Rep., 132-3; 1 Parsons on Contracts, 234; 5 Blackford’s Ind. Rep., 447.)
Indeed such seems to be the mle recognized by Judge Story in his treatise on promissory notes, published since that on bills *661 of exchange. For in his work on promissory notes, after recognizing to its full extent the rule in Bank U. S. vs. Carneal, (2 Peters, 543,) in which it was held that a party living in one town may be notified through the post-office at another, provided such office is nearer to his residence than that at the town in which he lives, or is the office at which he is accustomed to receive his letters, he proceeds to say, that if such party “ resides in the country on a plantation, where there is no town, or where there are several county post-offices, the same general rule will apply.” (Story on Promissory Notes, secs. 342, 343.)
The law only demands of the holder of the bill the exercise of due and reasonable diligence in giving notice of its dishonor to the parties sought to be charged. The rules, with regard to the time and manner of giving notice, have been adopted for this end only. Courts are, and should be, extremely cautious in admiting or recognizing any changes which trench upon these established regulations. Still, inasmuch as they are founded upon general interest and convenience, and grow mainly out of the custom of merchants, it is obvious that they must, from time to time, admit of modifications to suit them to the actual condition and business of men. “ They must expand according to the exigencies of society.”
A great change has occurred in the business and condition of the commercial world since 1823, when the case in Littell was decided. Facilities for the transmission of intelligence from point to point have been increased; new and more convenient postal arrangements have been effected — and, in consequence thereof, conveyance of letters by private hand has been almost abandoned. Persons resident in the same town or city frequently communicate with each other through the post-office in such place, because it is now the legal duty of postmasters to deliver such letters, which was not the case in 1823. Almost every person residing near a post-office resorts there regularly for his letters, as is shown to have been the case with Bondurant here. And it is rendered reasonably certain that he must have received the notice deposited in the office by the *662 notary at an earlier day than he could have obtained it if sent to Cincinnati and returned.
In addition to this we may say, that there was no necessity in this case for sending the notice around by Cincinnati in order to charge the appellant.
It is proved that Everett was the agent for Chenoweth & Co. for the collection of the bill. Suppose Chenoweth & Co. had been in Mt. Sterling on the day of protest, and had received actual notice' of its dishonor; would it be contended that, in order to charge the indorser and drawer, notices should be sent by Chenoweth & Co. to the latter by mail by the way of Cincinnati? If not, why should such action be required of their agent, who had control over the bill and directed the mode of giving notice ?
It is proved that it would have required four days by regular course of mail for the notice to reach Mt. Sterling, if sent by Cincinnati; and conceded, if that mode had been adopted, that the drawer would have been liable. Why he can justly complain of want of diligence, when it appears that notice was actually placed in the post-office at Mt. Sterling on the same day the bill was dishonored, and then as much in the legal custody of the postmaster for delivery as if received four days later from another office, and thus rendered reasonably certain that he received it earlier than he could have done by the circuitous mode contended for, it is difficult to perceive.
Upon the whole case, we are convinced that the judgment of the circuit court is right, and it is therefore affirmed..