### WESTFALL vs. FARWELL and another.

Where a note was payable at a bank in the city of Madison, and an indorser resided in the town of Westport, six miles from Madison and from the residence of the notary who protested the note, but usually received his mail matter at the post office in Madison: *Held*, that a proper notice deposited in the post office at Madison, addressed to such indorser at Madison, was sufficient to charge him, although there was a post office in the town of Westport nearer to his residence.

Actual transmission by mail from one place to another is not essential, in all cases, to a good service through the post office.

Under the provisions of sec. 5, chap. 12, R. S. 1858, authorizing the notary to forward notice by mail whenever the indorser resides more than two miles from the residence of such notary, it is good service, in all cases where the indorser so resides, but usually receives his letters at a post office *within* those limits, for the notary to deposit the notice in a drop letter at such office, addressed to the indorser *there*.

The same section, in requiring the notary to "personally serve" the notice upon indorsers, within the limits of two miles from his residence, did not design to require an actual delivery to the *person* of the indorser in all cases, but includes a service by leaving it at his residence or place of business, as before.

It is no defense to an action by the holder against an indorser properly notified, to show that the holder attempted to notify *other* indorsers and failed.

ERROR to the Circuit Court for *Dane* County.

This was a joint action against the makers of a promissory

note, and Lawrence, *Farwell* and *Fairchild*, who were indor-
sers successively in the order in which their names are men-
tioned. The plaintiff recovered judgment against the mak-
ers and Lawrence the first indorser, but *Farwell* and *Fair-*
*child* had a verdict in their favor, under the rulings of the
court on the trial, upon the question of notice. Those rulings
are sufficiently stated in the opinion of this court.

*Carpenter & Sprague,* for plaintiff in error, argued that the
notice deposited in the post office at Madison for *Farwell*
was good, if he usually received his mail matter at that
office, and cited R. S. 1858, p. 144, sec. 5; *Bell vs. State
Bank,* 7 Blackf., 456; *Jones vs. Lewis,* 8 Watts and Serg.,
14; *Bank of Columbia vs. Lawrence,* 1 Peters, 580; *Timms
vs. Delisle,* 5 Blackf., 447; *Fisher vs. State Bank,* 7 id., 610;
*Walker vs. Bank of Augusta,* 3 Kelly, 486; *Foster vs. Sineath,*
2 Richardson (S. C.), 338; *Eagle Bank vs. Hathaway,* 5 Met.,
212; *Carmena vs. Bank of Louisiana,* 1 La., 369; *Carson vs.
Bank of Alabama,* 4 Ala., 148; *Green vs. Farley,* 20 id., 332;
*Sharpe vs. Drew,* 9 Ind., 281. The charge of the court was
erroneous. *Williams vs. Bank of U. S.,* 2 Peters, 100; Sto-
ry on Notes, § 340; Edwards on Bills, 456, 601-2.

*Abbott, Gregory & Pinney, contra,* contended that the notice
to *Farwell* was insufficient, citing *Ransom vs. Mack,* 2 Hill,
587; *Sheldon vs. Benham,* 4 id., 129; 6 How. (U. S.), 248;
*Manchester Bank vs. Fellows,* 8 Foster, 310; *Davis vs. Bank
of Tenn.,* 4 Sneed, 390; *Newberry vs. Trowbridge,* 4 Mich.,
391; *Seneca Co. Bank vs. Neass,* 5 Denio, 330; *Montgomery
Co. Bk. vs. Marsh,* 3 Seld., 481; *Van Vechten vs. Pruyn,* 3
Kern., 549; 5 Mart., N. S., 139; 6 id., 508. They argued
also that the failure to give notice to *Farwell* discharged
*Fairchild,* a subsequent indorser, citing *Elsee vs. Gatward,* 5
Term R., 143; *Thorne vs. Deas,* 4 Johns., 96; *Smedes vs.
Utica Bank,* 20 id., 379; Edwards on Bills, 112.

*Carpenter,* in reply, on the last point cited *Henry vs. State
Bank,* 3 Ind., 216; 5 Cow., 303; 5 Met., 212.

*By the Court,* PAINE, J. This is an action in which the
defendants in error were sued as indorsers of a promissory
note, together with the makers. The plaintiff recovered

judgment against the makers, but the indorsers were discharged under the rulings of the court on the trial upon the question of notice.

The due presentment of the note at the bank in the city of Madison, where it was payable, and its dishonor, were shown by the certificate of the notary; also that he deposited a notice to the defendant *Farwell*, as indorser, in the post office at Madison, in a letter addressed to him at that city. After showing this, the plaintiff further proved by the notary, that *Farwell* resided in the town of Westport, about six miles from the city of Madison, and from the residence of the notary, and then offered to prove by him that *Farwell's* post office address was at the city of Madison, and that he usually received his mail matter there. This evidence was objected to, and rejected by the court. It was also shown by the defendant that there was a post office in the town of Westport, within two miles of his residence.

The question, therefore, is, whether, assuming that he usually received his mail matter at Madison, a proper notice deposited in the post office there, addressed to him at that place, would be sufficient to charge him as indorser. We think it would. It is well established that where the notice is to be actually transported by mail from one place to another, it is sufficient if it be directed to the post office at which the indorser usually receives his mail, though such office may not be in the town where he resides, and though there may be another office nearer to his residence. *Bank of Geneva vs. Howlett*, 4 Wend., 328; *Reid vs. Payne*, 16 John., 221; *Bank vs. Lawrence*, 1 Pet., 583; *U. S. Bank vs. Carneal*, 2 id., 551; *Downer vs. Remer*, 21 Wend., 12; *Bank vs. Marsh*, 3 Seld., 481.

True it is often said that the notice should be sent to the nearest post office. But that is merely stating the general rule, founded upon the presumption that the party does his business at that office. But the above cases show that where this presumption is overcome by actual evidence that he receives his mail at another office, then the notice should properly be directed to such other office, if known to the person giving notice, though it might be good at either.

This results necessarily from the application to such a state of facts, of the general principles governing this subject. The law requires the holder to use due diligence to notify the indorser. Where service by mail is allowed, the notice should be sent to the office where he has reason to believe the indorser will soonest receive it. In the absence of any information to the contrary, he may assume the nearest post office in the town where the indorser resides, to be the proper one. But if the indorser actually receives his mail at another office, in another town even, and this is known to the person sending the notice, it is certain that the object of giving notice at all would be best accomplished by sending it to such other office. The reasonable presumption is that the indorser would sooner receive it there, as every man may be safely assumed to receive his mail at the point where he can get it the soonest and with greatest convenience to himself. While therefore it may not be established that it would be essential to send it to such office, it is established that such would be good and the more proper service of the notice. It follows therefore from these authorities, that if the note had been protested at some place other than Madison or Westport, as for example, at Milwaukee, it would have been good service to have deposited the notice in proper time, in the post office there, addressed to *Farwell* at the city of Madison. But it is clear that the notary at Madison had the right to serve the notice by mail, as *Farwell* lived in another town and six miles from his residence. If therefore it was not good service for him to deposit it in the post office at Madison, it would follow that in one case a notice sent to that office would be sufficient to charge *Farwell* as indorser, and in another case not, though both were entitled to be served by mail. It is not easy to perceive any substantial reason for such a conclusion. On the contrary, where it is once established that a notice to charge an indorser should be sent properly to a particular post office, it would seem reasonable to say that another notice, equally entitled to be sent by mail, would be sufficient if sent to the same post office. Yet the counsel for the indorsers contended that it is not so, and that no service through the post office is good

unless the notice is actually transmitted by mail from one place to another. It must be admitted that there is language in some of the authorities that would imply this. Yet I have found no case deciding the exact question here presented, that is, whether, conceding the right to serve the notice by mail, it would be sufficient to deposit it in the post office where the presentment was made, that being the one at which the indorser usually received his mail. On the contrary, the question in those cases has been, whether the party was entitled to serve the notice by mail at all. Independently of any statutory provisions, the rule of the commercial law was, that where the holder and the indorser resided in the same place, the notice must be personal and could not be served by mail. And in applying this rule the question has frequently arisen, what was to be understood by the same place or town? And some cases have held that it did not mean merely within the same corporate limits, but within the same vicinity, doing business at some common centre. They have held accordingly that where the indorser resided outside of the limits of the city or town where the presentment was made, yet did his business and received his mail there, and there was no post office in the town where he resided, nearer to his residence, to which the notice could be sent by mail, then he was to be considered in the same place, in the meaning of the commercial rule, and entitled to the same notice as though he were actually within the limits of the city or town; and consequently that the notice could not be deposited in the post office there. The following are cases of this class, and it will be seen that the real point decided was, that the party giving notice was not entitled to send it by mail at all, but that the indorser was entitled to the same service as though he lived within the actual limits of the same town or city. *Patrick vs. Beazley*, 6 How. (Miss.), 609; *Hogatt vs. Bingaman*, 7 id., 565; *Barker vs. Hall*, Martin & Yerg., 183; *La Porte vs. Landry*, 5 Mart. (La.), 359; *Bank vs. Rowell*, 6 id., 506; *Bank vs. Battle*, 4 Humph., 86; *Davis vs. Bank*, 4 Sneed, 390. It is very certain, therefore, that none of these cases, nor others like them which might be cited, sustain the position that where a party

has a right to serve the notice by mail, it is not sufficient to deposit it in proper time in the post office at which the indorser usually receives his letters. They are therefore not authorities against our conclusion.

On the other hand, there are a number of authorities which hold that even under the rule of the law merchant, "the same place" refers to the corporate limits of the town or city where the presentment is made, and that consequently where the indorser resides outside of these limits, he is not entitled to personal service, and if he gets his mail at the post office within them, it is sufficient to deposit the notice there. *Jones vs. Lewis*, 8 Watts and Serg., 14; *Bank vs. Lawrence*, 1 Peters, 578; *Timms vs. Delisle*, 5 Blackf., 447; *Bell vs. State Bank*, 7 id., 457; *Walker vs. Bank*, 3 Kelly, 486; *Carson vs. Bank*, 4 Ala., 148; *Foster vs. Sineath*, 2 Rich. (S. C.), 338. These cases sustain our conclusion, and overturn the proposition that an actual transmission from one place to another is indispensable in all cases to a good service through the post office.

The point in controversy between this class of cases and the other was as to what was to be understood by the words "the same place or town," as a criterion to determine whether the indorser might be served through the post office, or was entitled to actual service in person, or at his residence or place of business. But it is not necessary for us to determine which class has the better reason upon this point, as our statute has entirely removed the question itself, at least where the notice is served by a notary, as in this case. It provides (chap. 12, sec. 5, R. S. 1858,) that the notary shall personally serve the notice upon the indorser if he resides within two miles of the residence of the notary, but that if he resides beyond these limits, it may be sent by mail. It is clear, therefore, that here the indorser was not entitled to personal service, as he was held entitled in all the first class of cases. It is clear that here the notice might have been sent by mail, which in all those cases it was held could not be done. We think, therefore, they are not applicable to the question presented under our statute, and are not authorities against,

while all the latter class fully sustain our conclusion. We can see no reason, then, when it is once established that notice may be served through the mail, to say that it is not good service to deposit it properly in the post office where the indorser usually receives his letters. On the contrary, it might sacrifice his interests, and thus defeat the very object of the law on the subject, to hold otherwise. Because, as before remarked, the reasonable presumption is, that every man will soonest receive a letter if sent to the office where he usually gets his mail. All the cases imply, for that reason, that such office is peculiarly the proper one for such a notice. But if, in a case like this, the party is precluded from depositing it in that office, merely because it happens to be at the `place where the presentment is made, and is obliged to send it, merely to secure a transmission, from one place to another, to the post office in the country town where the indorser resides, but to which he may seldom or never resort for his letters, it is obvious that he might be seriously prejudiced by such a rule, and that it would tend to defeat the primary object of the law, which is. to furnish him notice as soon as possible. The fact of transmission from place to place is not material to the object of the law, which is fully accomplished when the notice is actually delivered at the office which, of all others, affords the strongest presumption that the indorser will immediately receive it. The law, it is true, says the notice may be "forwarded by mail." But to say that this necessarily requires it to be sent from place to place, when the office where it is deposited is the most proper one for its destination, is to adhere to the letter and reject the spirit of the law. The meaning was, that where the notary was not obliged personally to serve the notice, he might resort to the postal service of the government to cause it to be delivered through the proper post office—to be transmitted, if necessary for that end, or simply deposited as a drop letter, where that would accomplish its proper destination. The case of *Jones vs. Lewis*, before cited, sustained this conclusion, even where no postage was paid on drop letters, and it was not the legal duty of postmasters to deliver them. It is much clearer

now, when postage is required, and it is as much the duty to deliver them as any other letters.

The case of *Newberry vs. Trowbridge and Owen*, 4 Gibbs (Mich.), 391, relied on by counsel, seems to properly belong with the first class of cases already mentioned. The court imply that the indorser, though living in a town adjoining Detroit, yet, having an office and place of business there, was to be considered as residing in the "same place" with the holder. Neither was the case of *Ransom vs. Mack*, 2 Hill, 587, like this; for though the court uses some language implying that transmission from place to place is essential to good service through the post office, yet the facts did not present the question whether it might not possibly be good without that. The case most similar to this in its facts is *Seneca Co. Bank vs. Neass*, 5 Denio, 429. The difference between them is, that in that case the notice, instead of being deposited in the post office where the presentment was made, and where the indorser usually got his letters, was addressed to him in an adjoining town, where he resided, which was also nearer to his residence. That was held to be good notice. But whether it would have been good if deposited addressed to him at the office where the presentment was made, was of course not decided, though that question is suggested by WHITTLESEY, J., p. 339. In holding the notice good which was sent to the town where he lived, some stress is placed on the fact that it did not appear that the party giving notice knew that the indorser usually received his letters in the town where the presentment was made. The same fact is noticed in the opinion of the court of appeals in the same case, 3 Com., 445, and the opinion seems to imply that if this had been known, the notice should have been deposited addressed to him at the office in the town where presented, instead of being sent to the town where he resided. We have examined this question carefully, as its importance demanded, and have been led to the conclusions already stated.

The next question relates to the service upon the indorser *Fairchild*, who resided within the city of Madison. The notary testified that the notice to him was delivered to his son.

And the plaintiff further offered to prove by him that he called at *Fairchild's* residence to serve the notice, and left it with his son for him. The evidence was objected to, and rejected by the court. It is clear, unless our statute has changed the mode of service, that this evidence should have been admitted. For, independent of the statute, it admits of no question that the notice may be served by leaving it at the residence or place of business of the indorser. We think the statute was not designed to change the rule in that respect. True, it provides that within the limits of two miles from his residence, the notary shall personally serve the notice. There was once a question between Mr. Chitty and the notaries of London, as to whether they were bound to serve such notices themselves or might leave it to be done by clerks. That question has sometimes arisen in this country; and it might possibly be said that the statute was designed to settle this question and make it the personal duty of the notary to serve the notice himself. But we are not prepared to say that the word "personally" was used with this design. On the contrary, the context would seem to show that it had reference to the person of the indorser, and not of the notary. It provides that within certain limits the notary shall personally serve it. Beyond those he may serve it by mail or other safe conveyance. There is much reason for saying that the personal service is referred to as contradistinguished from service by mail. It must also be conceded that the phrase "personal service" is one frequently occurring in the law, and that in its strictest sense, it implies an actual delivery of the notice to be served to the person for whom it is intended. But conceding all this, we still think it was not used in that sense in the statute.

In the first place, it would be a very remarkable provision if it was so used. It would be impossible to notify any indorser who was away from home at the time service was required. Any indorser desiring to discharge himself would only have to leave at about the time the notes fell due. It cannot be that the legislature intended to produce this result. On the contrary, the statute shows on its face, that it was passed to remove the uncertainty arising from the conflict of

authorities already mentioned. It did not seek to prescribe any new modes of service, or to abolish any old, but simply to define with certainty the limits within which the one or the other of the established modes should be used. And we have no doubt that the personal service required was intended to include those modes of service allowed by the mercantile law where service by mail was not permitted. It is sometimes used in this general sense by law writers, as contra-distinguished from service by mail. Thus in 1 Am. Lead. Cases, 412, it is said, "If the holder and indorser reside in the same place, the rule is that notice must be personal, that is, must be given to the individual, *or left at his domicil or place of business*, and cannot be sent through the post office." So it is frequently said in the books, that leaving the notice at the dwelling house or place of business is "tantamount to personal service." An instance of the same use of the word occurs in *Bowling vs. Harrison*, 6 How. (U. S.), 257. The court below had instructed the jury that where the parties resided in the same town the "notice must be personal." As the question arose upon the sufficiency of a notice through the post office, the court say that the word "personal," as used in the instruction, must be construed to include the service by leaving the notice at the dwelling house or place of business, and was used generally merely to distinguish these modes of service from that through the post office. We think that was the case in our statute, and consequently that those modes may still be resorted to in the same manner as before.

Indeed the counsel for the indorsers did not contend that the evidence offered by the plaintiff did not show a proper service upon *Fairchild*, but claimed that he was discharged by reason of the failure properly to notify *Farwell*, the other indorser. It appears from what we have already held, that this reason did not exist. But even if it had, it would not support the conclusion. No case was cited, and none can be found, where it has been held that a failure to notify all the indorsers, even though notice is attempted, will discharge one who is properly notified. Counsel attempted to sustain the position by an application of the principle that where

one attempts gratuitously to perform service for another, and does it so negligently as to cause him damage, he is liable to an action, referring to *Thorn vs. Dean*, 4 John., 96, and Edwards on Bailments, 112. But the principle is wholly inapplicable. *Fairchild* did not intrust the holder of the note, nor the notary, with any business to be performed for him, either gratuitously or otherwise. They were acting for the holder. And although a notice given by him to the other indorsers would have enured to *Fairchild's* benefit if he had paid the note, yet a failure to give such notice was not a violation of any obligation which the holder was under to him, and was not a malperformance of any work which the holder had undertaken to do for him. Whether an action would lie against a notary in such a case, under our statute, which makes it his official duty to notify all the indorsers, it is not necessary to determine. But in a case where the statute did not make it his duty, but he undertook to do it for the holder, it was held that an action would not lie against him by the second indorser who was notified and paid the note, for failing to notify the first indorser. *Morgan vs. Van Ingen*, 2 John., 204. The idea seems not to have occurred in that case, that such failure could constitute any defense against the holder.

The judgment must be reversed, with costs, and a new trial awarded as against both indorsers.