## ADAMS vs. WRIGHT.

The notary's certificate and record are not the only evidence by which the service of notice of the dishonor of a note can be established. The notary may be called as a witness to prove the notice or to fortify the certificate.

The certificate is open to contradiction, and if the oral testimony of the notary should contradict it, the jury must weigh both and determine between them.

A notary cannot lawfully certify or record, as matters of fact, things as to which his testimony, if called as a witness, would be excluded as mere *hearsay*.

The words "personally serve" in sec. 5 of chap. 12, R. S., 1858, were designed to include service by leaving the notice at the indorser's residence or place of business as well as by actual delivery to him, the words having been used in contradistinction to service by mail.

The words "Notice for W. W. (left at his house), Oshkosh," in the notary's certificate of service of notice of the dishonor of a note, indicate that the notice was served by leaving it at the dwelling house of the person named.

The omission to say "dwelling house" did not vitiate the certificate. Notaries are only to be held to reasonable certainty in the use of language.

Neither is the certificate defective in not stating the hour of the day when the notice was left, or with whom it was deposited, whether a member of the family or other person, or the particular circumstances attending the service, or that the indorser was absent.

Service at the place of business must be during business hours, but service at the residence will be sufficient if made during any of the hours when members of households are attending to their ordinary affairs.

If service of notice be properly made at the dwelling house or place of business of the indorser, it is sufficient, although he did not in fact receive it.

The notary in this case testified that he had protested several notes on which the defendant was indorser, and that on one occasion, but whether on that of giving the notice here in question he could not say, he gave the notice to a boy whom he met in the defendant's front yard (and who said that he was the defendant's boy), and asked him to hand it to his father; that the boy turned and went towards the house, but that he did not see him go in, as the door was not in sight from where he stood. *Held*, that the mode of leaving the notice thus described did not constitute a valid service of the same.

*Held, further*, that it was for the jury to determine whether the notice so left was that of the protest of the note then in suit.

APPEAL from the Circuit Court for *Winnebago* County.

This was an action against *Wright* as indorser of a promissory note, payable at the Bank of Oshkosh. The note was protested for non-payment, and the complaint alleged that due notice of protest and non-payment was given to the defendant: which allegation was denied by the answer.

On the trial the plaintiff gave in evidence the note, with the certificate of protest annexed. This certificate, after stating that the note was presented at the Bank of Oshkosh on the 12th of December, 1859, which was the day it became due, and that payment was refused, contained the following: "And I, the said notary, do hereby certify that on the same day and year above mentioned, notices of the foregoing protest were put into the post office at Oshkosh as follows: Notice for James Freeman, Oshkosh, Wis.; notice for *W. Wright* (left at his house) Oshkosh, Wis. Each of the above named places being the reputed place of residence," &c. The plaintiff then called as a witness the notary by whom the protest was made, and asked him the following question: "Did you give notice to the defendant of protest of the note?" The defendant objected to the question because the certificate and record of the notary, required by

statute, were the best evidence, and because the certificate could not be explained or contradicted by parol evidence. The objection was overruled, and the witness answered, "that he had no particular recollection of this notice," and produced his official record of protests and notices. The plaintiff offered this record in evidence; the defendant objected to it on the ground that there was no proof that the notice of which said record purported to contain a copy was ever served on the defendant personally or otherwise; but the objection was overruled, and the record given in evidence. It contained a copy of the note, and of the certificate of protest, &c., previously read in evidence, and also a copy of a notice of protest for non-payment of the note, addressed to the defendant. It was admitted that the defendant resided, at the time of the protest of said note, within two miles of the residence and place of business of said notary; and the plaintiff rested. The defendant moved for a nonsuit, upon the ground that there was no proof of the personal service of the notice of protest upon him; but the motion was denied. The defendant, as a witness in his own behalf, testified that no notice of said protest had been personally served upon him; that none had been left at his house to his knowledge; and that he had made inquiries upon the subject of all the members of his family. The plaintiff then recalled the notary, who testified that he was acquainted with the defendant's place of residence. *Question.* "Have you left notices of protest at his house?" Objected to, and objection overruled. *Answer.* "I have, several times." *Question.* "State whether in all cases in which you have made a record of the manner of service upon the defendant, of the notice of protest and non-payment of notes, you have made the same in the manner indicated by the record of protest." Objected to, and objection overruled. *Answer.* "When I considered it personal service, I entered it so in my record, and did not enter the facts and circumstances which constituted the service.  *  *  In one instance only—I cannot tell whether this is the one—I met a boy in the defendant's front yard; he said he was the defendant's boy; I gave him the notice, and asked him to hand

it to his father; he turned and went towards the house; I did not see him go in, as I could not see the door from where I stood; this was between the gate and the front door."

The defendant requested the court to instruct the jury as follows: "1. Unless the jury find from the evidence that the notice of protest was personally served on the defendant, the plaintiff cannot recover. 2. Leaving notice at his house was not a personal service, unless it was left with some member of the family to whom its contents were explained. 3. Giving the notice to a boy in the defendant's front yard, and requesting him to hand it to the defendant, was not a personal service." These instructions were all refused; and the court instructed the jury that if the notice of protest was left at the defendant's house, that was equivalent to a personal service; and that it made no difference that the defendant did not receive the notice, or that he never heard of it, or that he never had any knowledge that it had been so left, or whether he ever heard of the protest of the said note.

Verdict and judgment for the plaintiff.

*Freeman & Jackson*, for appellant:

1. It was incumbent on the plaintiff to show a proper notice properly served. 6 Wis., 154; 2 id., 530. 2. The certificate of protest does not show that the notice was personally served, or that it was left at the defendant's dwelling house. If the words "left at the house" are deemed equivalent to "left at his dwelling house," and the leaving of the notice at the dwelling house equivalent to personal service, still it was incumbent on the plaintiff to show that the notice was left within reasonable hours, and that if the house was shut up by reason of the temporary absence of the defendant, it was left in a way reasonably calculated to bring knowledge thereof to the defendant, if he or his servants should visit the house. Story on Prom. Notes, 274, 275, 278, note, 377; Chitty on Bills, 502, 503, 516; 3 Kent's Comm., 107; 2 Greenl. on Ev., 190; *Allen vs. Edmundson*, 2 Exch. R., 721; *Parker vs. Gordon*, 7 East, 385. 3. The question asked the notary on examination in chief, should

June Term, 1861.

ADAMS
v.
WRIGHT.

have been ruled out. It was not competent for the plaintiff to contradict or explain by parol the notary's certificate. 1 Greenl. on Ev., 364. 4. The court should have granted the defendant's motion for a nonsuit. *Foot vs. Sabin*, 19 Johns., 154; *Pratt vs. Hull*, 13 id., 334.

*Wheeler vs. Coolbaugh*, for respondent:

1. The question asked the notary on his first examination was proper. The object of the question was to lay a foundation for the introduction of the notice given to the defendant, to show its contents, which was necessary. *Sumner vs. Bowen*, 2 Wis., 524; *Smith vs. Hill*, 6 id., 154. 2. It was sufficient service of the notice if it was left at or sent to the domicil of the defendant. Story on Prom. Notes, § 312, and note 1; Story on Bills of Ex., §§ 297, 382; *Stedman vs. Gooch*, 1 Esp., 3; *Bank of U. S. vs. Hatch*, 6 Peters, 250.

December 11. *By the Court*, DIXON, C. J. The motion for a nonsuit was properly denied. At that time the plaintiff had made out a sufficient *prima facie* case to charge the defendant as indorser. Nor was there any error in the previous proceedings. The certificate of the notary showing presentment and protest for non-payment, and service of notice upon the defendant, together with the time and mode of giving it, was received without objection. There was no impropriety in the question put to the notary as to whether he gave notice to the defendant of the protest of the note. It was obviously asked for the purpose of laying the foundation for the introduction of his official record of protests and notices, which was immediately produced. But if it had been put for any other purpose, we cannot perceive why it should have been rejected on the grounds urged, or what other good objection there was to it. The notary's certificate is not the only evidence by which the service of notice of the dishonor of a note can be established. It may be shown by other evidence, and the notary himself may be called to prove it. The certificate and record are but presumptive evidence by statute (R. S., chap. 12, secs. 4, 6), and being so, are liable to be rebutted or disproved by the testimony of witnesses. And if by other witnesses, then why not by the notary? It is

hardly to be supposed that a plaintiff who has made a good case by the record, would, at the risk of shaking or destroying it, seek to go further into the facts by an oral examination of the notary; but if, not being content with the record, he should desire to strengthen it by the oral testimony, we can see no objection to it. Of the several modes of establishing notice, all are open to him, and he may resort to one or more at his option. The only possible ground of objection there can be is, that having made a sufficient *prima facie* case, further proof is unnecessary. If in thus endeavoring, by the oral testimony of the notary, to fortify the case made by the record, the plaintiff should, as afterwards happened in this action, call forth facts which tend to disprove it and to falsify the certificate, it would become a question of veracity between the notary as a witness upon the stand, and as a public officer acting under the sanctity of an official oath, to be settled by the jury. He being a competent witness, and the certificate being open to explanation and contradiction, it is, of course, possible for him to dispute it, and if he does, the jury must weigh his account on oath against the official document under his seal, and determine between them. This was so held under a similar statute of Pennsylvania, in the case of *Stewart vs. Allison*, 6 Serg. & Rawle, 324. That case, indeed, goes much further, and sanctions a doctrine which the facts of this do not present. The majority of the court held that the protest of the notary under his official seal was competent evidence to go to the jury, notwithstanding he was produced as a witness and testified positively that he had no knowledge whatever of the transaction, and that the protest was written and sealed by his son, who acted as his clerk or agent, and who said he had given the notice. The dissenting opinion of GIBSON, J., is a powerful argument against its admissibility in such a case, and the supreme court of New York, in *Onondaga County Bank vs. Bates*, 3 Hill, 53, under a statute like ours, held that the office of notary was one of personal trust and confidence, and that its duties could not be performed by a clerk or third person. It seems obvious from the nature of his duties and the provisions of the statute, that his official

oath is substituted for the ordinary judicial oath taken in the presence of the court and jury, and that he cannot lawfully and conscientiously certify or record as matters of fact, things which he would be incompetent to testify to as a witness if called to the stand in the trial of a cause, and which would be excluded as mere hearsay. Still we think the reasoning of the majority of the court in *Stewart vs. Allison* applicable to a case like this, where the notary does not directly deny a knowledge of the facts stated in his certificate, but only by inference and by testifying to circumstances which, though not absolutely inconsistent with them, tend to draw them into doubt and remove their effect. They say that the jury may possibly give more credit to the official certificate than to the oath of the notary; that he may have been tampered with after giving his certificate; or the jury may think that the certificate and parol evidence are not inconsistent, or that he may be mistaken after the lapse of many years, or confound one transaction with another.

The record of the notary was properly admitted. The objection taken to it was, that the certificate which had been already introduced, showed no service upon the defendant personally or otherwise, of the notice of which it purported to contain a copy. So far as the objection was founded on the supposed requirement of the statute that notice must be actually delivered to the person of the indorser where he resides within two miles of the residence of the notary, it has been already answered by this court in the case of *Westfall vs. Farwell*, 13 Wis., 504. It was there held that the words "personally serve" were designed to include service by leaving the notice at the indorser's residence or place of business, as well as by actual delivery to him, and that they were used in contradistinction to service by mail. As to the certificate being uncertain in not showing whether the notice was sent through the postoffice or left at the defendant's house, we think that the words "left at his house, Oshkosh, Wis.," placed immediately after his name, indicate that the latter was the mode of service adopted as to him. The omission to say "*dwelling house*" did not vitiate the certificate. Notaries are only to

be held to reasonable certainty in the use of language, and when they say that notice was left at the house of the indorser, all men would understand it to signify his dwelling house. Neither is the certificate defective in not stating the hour of the day when the notice was left, or with whom it was deposited, whether a member of the family or other person, or the particular circumstances attending the service, or that the defendant was absent. It is very generally said in the books, and the doctrine is laid down without any apparent limit or qualification, that the service by leaving the notice at the dwelling house or place of business, is equivalent to a personal delivery to the party to be notified. Judge STORY says: "If it be not personally given, then it will be sufficient if it is given or left at or sent to his domicil or place of business." Story on Promissory Notes, § 312. Mr. CHITTY says: "With respect to the mode of giving the notice, personal service is not necessary, nor is it requisite to leave a written notice at the residence of the party, but it is sufficient to send or to convey verbal notice at the counting-house or place of abode of the party, without leaving notice in writing; and the giving such verbal notice to a servant at his home, the defendant having left no clerk at his counting-house as it was his duty to do, suffices." Chitty on Bills, 502. This is the language of the books generally, and no case has fallen under our observation where it has been held that the absence of the party to be notified was a condition necessary to sustain service by leaving the notice at his place of abode or business; though it is said in *Ireland vs. Kip*, 11 Johns., 231, that the notice must be personal, or something tantamount, such as leaving it at the dwelling-house or place of business of the party, *if absent.* See authorities cited by Judge STORY, *supra.* Nor does any case seem to have arisen requiring an accurate definition of the manner in which service by leaving notice at the domicil or place of business, when found open and occupied, shall be performed. Where the particular mode of service did not appear, I suppose the cases have gone off on the reasonable assumption that an officer engaged in a duty of that kind would perform it with proper care and prudence, and use

the means most likely to attain the object in view—that he would go to the place of service and inquire for the party to be notified, and, if present, deliver it to him in person, or if that should be unsuitable or inconvenient, that he would hand it to a servant or some inmate of the place with a request that it be so delivered; and if absent, that he would in like manner leave it with some person residing or doing business therein, with a similar request. Service at the place of business must be during business hours, but service at the residence is not so regulated. It will be sufficient if made during any of the hours when members of households are attending to their ordinary affairs. But these particulars of service need not be stated in the certificate. It will be sufficient if it shows service at the residence or place of business, which constitutes legal diligence, and the special circumstances will be presumed until the contrary is shown.

We are not called upon to express any opinion as to the admissibility of the testimony of the defendant. He was permitted to testify without objection, that no notice in fact came to his possession or knowledge. It seems to be well settled law that it is no answer to service properly made at the dwelling-house or place of business, that the party to be notified did not in fact receive it.

After the defendant had given his testimony, the notary was recalled by the plaintiff, and testified, among other things, that he had protested several notes against the defendant, and that on one occasion, but whether on that of giving the notice in question he could not say, he met a boy in the defendant's front yard, who said he was the defendant's boy, and gave him the notice and asked him to hand it to his father; that the boy turned and went toward the house, but that he did not see him go in, as the door was not in sight from where he stood. The defendant thereupon requested the court to instruct the jury that giving the notice to the boy and requesting him to hand it to the defendant, was not personal service. Understanding the term "personal service" according to the definition given in *Westfall vs. Farwell*, we are of opinion that the defendant was entitled to the instruction. The testimony of the notary clear-

ly tended to impeach his certificate, and within the principles above stated, it was the legal right of the defendant to have it submitted to the jury to determine whether the notice was given as stated in the certificate or. in the oral testimony, or in other words, whether the occasion of which the notary spoke was that of giving the notice under consideration. If it was, the certificate must fall. Being the statement of a matter which the notary did not know, and false in fact, it could no longer be relied upon as evidence showing due service of notice. And as to the delivery to the boy being good service, it is not seriously contended that it was; and if it were, no authority can be found sustaining such a position. Nothing short of service upon the person, or at the dwelling-house or place of business, when those places were open and accessible, has ever yet been held a sufficient service, unless it was furthermore shown that the notice came to the actual knowledge or possession of the party; and it is not for us to make innovations upon a doctrine the usefulness of which depends so much upon its certainty and uniformity. For the strict rules which have been held upon this subject, see authorities referred to above, and particularly *Granite Bank vs. Ayers*, 16 Pick., 392. If in such a case as this it should be otherwise shown that the indorser actually received the notice, it would present a different question. The plaintiff's case would not then stand on the ground of the official act of the notary.

The instruction should have been given to the jury; and because it was not, the judgment is reversed, and a new trial awarded.