This matter comes before me by stipulation of counsel, so that the court may preliminarily determine the legal question as to the effect and construction to be given to a certain deed made June 10th, 1843, and recorded April 12th, 1853, which question is raised by answer in lieu of plea and is now heard under rule 70 of this court.
For brevity, I shall hereinafter refer to the complainant as complainant and to the defendants as defendants, making no distinction as to the particular defendant or defendants named in the bill of complaint, although some of the defendants join with complainant. The decree will take care of this situation.
The deed in question conveys certain premises in the city of Atlantic City now occupied, in part, by a sewerage disposal plant belonging to the Atlantic City Sewerage Company.
It is stipulated that the original deed has been lost and that a certified copy thereof may be used in lieu of the original, and that testimony of witnesses is not available to any of the parties as to any matter in connection with the deed.
From a reading of a certified copy of the original deed, without taking into consideration a certain endorsement *Page 46 
appearing thereon, it appears to have been between Andrew Leeds and Mark Read, of the first part, and "Joseph Conover and wife," of the second part. The granting clause is to "Joseph Conover and wife." The habendum is to "Joseph Conover, his heirs and assigns." The covenant of title starts out with "Joseph Conover and wife, their heirs and assigns" and concludes with "unto him, the said Joseph Conover, his heirs and assigns."
In so far as the certified copy aforesaid discloses, no interlineations or alterations appear on the face of the deed as it is copied and it is conceded that the same situation exists in the deed as recorded by the clerk of Atlantic county, as read on the record, so that, leaving out entirely the endorsement hereinafter referred to, the deed, on its face, conveys an estate by the entirety to Joseph Conover and his wife, Ruhama Conover.
At the time of the delivery of the deed, Ruhama Conover, the wife of Joseph Conover, was the owner of one-third of the premises in question and Andrew Leeds and Mark Read were the owners of two-thirds, so that the estate conveyed was the two-thirds concededly owned by Leeds and Read, of which two-thirds, in so far as the deed itself is concerned, Mrs. Conover became seized as a tenant by the entirety with her husband.
It is stipulated that Mr. Conover predeceased Mrs. Conover, so that, giving the deed its face value, she and those claiming under her became vested with the fee in said two-thirds portion of the property conveyed.
It is conceded then, that if the interpretation of the defendants is sustained, the complainant has no title whatever in the property in question, so that the sole issue on this hearing is the effect of the aforesaid conveyance.
The deed, dated on June 10th, 1843, as aforesaid, was acknowledged on the same date before John A. Clement, a commissioner, but was not recorded in the clerk's office of Atlantic county until April 12th, 1853.
At the end of the deed, after the acknowledgment, there appears this endorsement or certificate: *Page 47 
"The interlining of Conover wife was done by the consent of partys after the acknowledgment of the same.
March 17th, 1853. DAVID B. SOMERS."
It is also conceded that the county clerk, in recording the deed, did not note any interlineations at the foot of the deed, as the statute then provided should be done when interlineations or erasures in fact appeared on the deed to be recorded.
I shall refer to the notation of Somers aforesaid as an endorsement, even though complainant refers to it as a certificate, conceding that mere nomenclature is not decisive of the issue.
It appears by stipulation that David B. Somers was first appointed a commissioner of deeds in March, 1852, and that Somers is the same person who signed the endorsement aforesaid.
It is further stipulated that Joseph Conover died March 26th, 1850, so that Conover's death preceded the endorsement by approximately three years, and that Somers was not appointed a commissioner of deeds until approximately two years after the death of Conover.
It will be observed that Somers did not accompany his signature to the endorsement aforesaid with a designation of his official capacity.
There are three things stated in the endorsement over the signature of Somers, (1) the interlining of Conover wife (2) was done by the consent of the partys (3) after the acknowledgment of the same.
As heretofore said, the certified copy of the deed before me discloses no interlining and the endorsement of Somers does not disclose how many of the parties consented, or which of the parties consented, or when they consented, or how they consented, and when Somers speaks of the interlining having been done by the consent of the partys "after the acknowledgment of the same," it does not appear whether he intended to convey the idea that in using the word acknowledgment he meant of the deed or of the interlining. He says they acknowledged the same and that of which he speaks is the interlining, so that it may well be that he meant to certify that the parties acknowledged the interlining, or that the *Page 48 
alleged interlining was done after the deed itself had been acknowledged.
It will be further noticed that when he says the interlining was done by the consent of the parties he does not certify the interlining as having been done in his presence or that he saw it done, nor by whom it was done, nor does he certify, as heretofore said, how many of the parties consented, or which parties consented, or how or when he got knowledge of their consent.
Complainant says that it "does not contend that the said certificate is complete. Complainant contends, rather, that its rights are based upon the deed without the interlineations; that the certificate of David B. Somers has sufficient probative value to rebut the presumption that the interlineations were made prior to execution; that said certificate is fatally defective in that it does not go further and show a re-execution or re-acknowledgment, which it must show once it is established that the interlineations were made after execution of the deed." In other words, "that the certificate is sufficient to rebut the presumptions with respect to the interlineations prior to execution, but not sufficient to comply with the law which then necessarily demands that there be a re-execution or re-delivery of the instrument."
In complainant's contention, reliance is placed on the Somers' endorsement as (a) being evidence that the deed was interlined, and (b) that that which was interlined were the words "and wife" in the introduction, granting clause and part of the covenant, and that (c) the deed "taken altogether, as it is found in the record, including the certificate, indicates that interlineations were made after execution and acknowledgment." Complainant further contends that Somers, in making the endorsement, was "acting as a duly appointed officer in the performance of his duties" and that there is a presumption that he performed his duty.
Defendant contends that the Somers' endorsement is not entitled to any probative value whatever and that Somers was not acting in his official capacity when he made the endorsement but was a stranger to the entire transaction, and that he could not be acting in his official capacity, under duty to *Page 49 
make the endorsement, because as a commissioner of deeds the law did not give him authority so to do; that the fact of interlining not appearing on the face of the deed and the clerk of the court having failed to note at the bottom of the deed any interlineations, as it was his official duty to do, the presumption is that there was, in fact, no interlineation and that the endorsement cannot be used as evidence of that fact; that the endorsement is mere hearsay.
If the endorsement is to be given effect as proof of the fact of interlineation it must be under the principle of exception to the hearsay rule and the admission of hearsay statements by way of exception to the rule "presupposes that the assertor possessed the qualifications of a witness in regard to knowledge and the like." 3 Wigmore on Evidence 157 § 1424. In other words, the endorsement is not admissible unless Somers could have testified to the facts therein contained, of his own knowledge. His endorsement of what someone told him would not be admissible and the endorsement must show on its face that the endorser had personal knowledge, as in an acknowledgment to a deed, he certifies that the parties personally appeared before him, c.
Wigmore 157 § 1424 says:
"The Hearsay rule is merely an additional test or safeguard to be applied to testimonial evidence otherwise admissible. The admission of hearsay statements, by way of exception to the rule, therefore presupposes that the assertor possessed thequalifications of a witness (ante, sections 483-721) in regard to knowledge and the like. These qualifications are fundamental as rules of Relevancy."
Wigmore 401 § 1635 sub-div. 3 says:
"Where the officer's statement is concerned with atransaction done, not by him or before him, but out of hispresence (and out of the presence of his subordinates), the case is one in which obviously he can have no personal knowledge; the assumption must therefore be that his statement is inadmissible. It is to be noted, however, that the sufficient explanation is usually that the officer's duty does not extend to transactions out of his presence, and thus the recording or certifying of them is not covered by his official duty. For example, under the English ecclesiastical system it was the duty of the priest officiating at a baptism or a marriage to record the performance of the ceremony as an act done officially by him; but his duty was confined *Page 50 
to the performance of the ceremony, and hence his record of the age of the persons baptized or married was not made as a part of his duty, since the age depended on the date of occurrence of birth at another time and place. Thus, for matters not occurring in the presence of the officer, his record or certificate is inadmissible, not only because in general a witness must have personal knowledge, but also because an officer's duty is usually concerned only with matters done by or before him. Tested by either principle, there is a shortcoming."
As said by Dixon, C.J., in Adams v. Wright, 14 Wis. 413:
"The endorser's official oath is substituted for the ordinary judicial oath taken in the presence of the court and jury, and he cannot lawfully and conscientiously certify or record, as matters of fact, things which he would be incompetent to testify to as a witness if called to the stand in the trial of a cause and which would be excluded as mere hearsay."
And in Commercial Bank v. Barksdale, 34 Mo. 563, 572,
Holmes, J., said:
"The protest is to be evidence of the fact stated in it, of which the endorser is supposed to have personal knowledge, and credit is given to his official statements by the commercial world on the faith of his public and official character. In court the instrument speaks as a witness. Such statements made merely upon the information of another person would amount to hearsay only, if the endorser were himself upon the stand as a witness."
Somers certified that there was an "interlining." This would be of his own knowledge, if so, but he was under no duty to testify to that fact. He then said the interlineations were made by the consent of the parties. This he could not have known because Conover was dead. He does not certify that he saw the interlineations made and the inference is that he did not. He cannot, therefore, certify of his own knowledge as to when the interlineations were, in fact, made.
Somers was not performing a statutory duty in making the endorsement. He was not certifying to an acknowledgment or proof of a deed. It is true that the duty does not necessarily have to be of a statutory origin to raise the presumption, but it must be some duty, either imposed by statute or implied from the nature of his office. Wigmore § 1633 ¶ 1. *Page 51 
 Wigmore 407 § 1639, in speaking of the admissibility of records of official doings, says:
"Practically, then, the admissibility of a given register or record depends ultimately on whether the officer has the duty to do the class of things recorded; if they are within his duty, then the record is admissible; otherwise not."
Assuming, but holding to the contrary, that Somers did, in fact, make the endorsement in his official capacity as a commissioner of deeds, what authority did he have so to do?
The only act relative to the authority of commissioner of deeds that I have discovered is found in Nixon's Digest, Laws of NewJersey, 1709-1855, 130, which was approved April 15th, 1846, and provides for the appointment of commissioners of deeds by a joint meeting of the senate and general assembly, "which commissioners shall have authority to take the acknowledgment or proof of any deed or conveyance of lands, c."
Under the authority of the above act, an acknowledgment taken by a commissioner of deeds is prima facie evidence of the statements made in the acknowledgment.
A commissioner of deeds, in taking acknowledgments, certifies that the acknowledging parties personally appeared before him, that they were known to him, that he made known to them the contents of the instrument which they acknowledged; in other words, his certificate of acknowledgment is of things of which he has personal knowledge and which occurred before him personally. He certifies to facts which come to him by the exercise of his own senses and not the facts of which he has been informed by other persons.
It has been heretofore noted that the county clerk did not note any interlineations as appearing on the deed at the time it was recorded. This he was required to do by the statute then in force. Patterson's Laws 400 (the Evidence act of 1799 § 11). See, also, Elmer's Digest of 1838, 84; Nixon's Digest,1709-1855, 123 § 10, as well as R.S. 1937, 46:19-3.
We have then, an endorsement by Somers to the effect that there had been an interlining in the deed and if that endorsement states a fact, the failure of the county clerk to note that *Page 52 
fact when he copied it on the record. But do we have a situation where both the clerk and Somers were in the performance of a legal duty, i.e., duties imposed on them by statute or implied from the nature of their respective offices? As to the clerk, the answer must be yes, but as to Somers, he certainly was not performing a statutory duty. He was appointed a commissioner to take acknowledgments of deeds. He was not taking an acknowledgment of a deed. He was attempting to certify that the deed had been interlined "Conover wife," inserted with the consent of the parties after the acknowledgment of same. He was, therefor, it seems to me, performing a function that did not pertain to his official duties. He could have endorsed the fact of the re-execution, re-delivery and re-acknowledgment of the deed, if such had been a fact, and he could have recited that the interlined deed was acknowledged before him by parties who personally appeared before him, c. This he did not do. He merely certified to something, the truth of which did not and could not have come to him other than by the testimony of others, i.e., hearsay. He could have seen the interlineations if they had, in fact, been made, but all parties could not have appeared before him and consented thereto as Conover was dead and died prior to the commission of Somers as a commissioner of deeds. If the interlineations were, in fact, made during the lifetime of Conover, that fact must have come to Somers by mere hearsay.
The presumption is that the act of interlining, if done, and the consent of the parties, if given, were as of the date of the endorsement. The parties stipulate that there is no evidence to rebut the presumption, and yet this cannot be so if Somers was certifying to the truth, i.e., Conover having been dead three years, the parties could not have consented to interlineations as of the date of Somers' certificate.
We have, then, Somers certifying either to untruths or to something that someone else told him. Certainly this certificate was not in the line of any official duty imposed by law or otherwise and does not rise to the dignity of proof of any of the statements therein contained.
My holding is that Somers did not endorse the deed in his official capacity as commissioner of deeds and it would seem *Page 53 
that he did not so intend, inasmuch as he did not subscribe his official capacity under his name appearing on the endorsement.
I further hold that even had Somers been attempting to act in his official capacity, that on the face of the endorsement it appears that it is not entitled to be received as proof of the statements therein made, because it shows on its face that as to the consent of the parties, it was untrue because Conover could not have consented. It does not certify that the statements made by Somers were in any instance the result of knowledge gained by the personal appearance of the parties or that they or any one of them acknowledged in his presence either that the interlineations had been made after the execution of the deed, if in fact made, or when they were made, or under what circumstances they were made.
The presumption would be, of course, that if the interlineations were, in fact, made, that they were done before execution of the deed and in the absence of evidence to the contrary, the court would be bound by the presumption. Somers' mere statement as a stranger does not suffice to rebut such a presumption when a certified copy of the deed does not show that interlineations had, in fact, been made.
The certificate may not be received in evidence as proof, excepting as a whole. It cannot be received as evidence that interlineations were made and be excluded as to the rest of its contents. It cannot be received as evidence not only that interlineations were made, but that they were made after the execution of the deed. Certainly Somers could not be said to have been acting in his official capacity when he certified that interlineations had been made or that they were made after the acknowledgment of the deed, or that they were made by consent.
The court's attention has not been directed to any reported case directly in point dealing with such a situation as confronts it, but the following are some of the cases which at least indicate that the endorsement here in question is not admissible as part of the deed, at least not to the extent claimed by the complainant. *Page 54 
In Williams v. Handley (1813), 3 Bibb. (Ky.) 10, court of appeals, the whole opinion in this case reads as follows:
"The only point which seems material to be decided in this case is, whether an endorsement on a deed made after the execution of the deed, and not sealed by the parties, becomes a part of the deed and may be declared on in an action of covenant.
"All the authorities seem to agree, that, where any matter is underwritten or endorsed upon the deed at the time the deed is executed, it becomes a component part of the deed and may be so treated in pleading. But we have not been able to find any case at common law, in which an underwriting or endorsement made at another time, has been held to be a part of the original deed. In the case of Cook v. Remington, 6 Mod. 237, it was expressly decided that an endorsement made after the time of the execution of the deed, ought not to be taken as a part of the deed. Upon principle this doctrine seems to be correct. An agreement made and endorsed at a different time, is in fact a different agreement. If it be sealed and delivered, it becomes a new deed, and must be so treated; but if it be not sealed and delivered, to take it as part of the original deed, would be imposing upon the party an obligation which the law creates only in respect to certain solemnities, when the transaction was not in truth accompanied by those solemnities."
Allen v. Allen, 48 Minn. 462; 51 N.W. Rep. 473, where the court held that the name of the grantee could not be added to a deed by mere endorsement on the back.
Moody v. Mossey, 223 Pa. 321; 72 Atl. Rep. 555, wherein the deed, after signatures of grantees, and before the acknowledgment, had the following inserted:
"N.B. The above described * * * is not to be sold * * * but to descent from to his heirs by his wife * * *."
The court held: "We do not think that the `N.B.' attached to Exhibit `A' in the case stated is part of the deed * * *; and therefore, judgment should be entered in favor of the plaintiff * * *."
Allen v. Parkey, 149 S.E. Rep. 615; affirmed,154 S.E. Rep. 919; Blasey v. Delius, 86 Ill. 558; Jordan v. Stewart, *Page 55 23 Pa. 244; Reformed Dutch Church v. Ten Eyck, 25 N.J. Law 40;Putnam v. Clark, 29 N.J. Eq. 412; Boylan v. Meeker,28 N.J. Law 274; Otterson v. Hofford, 36 N.J. Law 129.
Of course, in the case at bar, if we accept Somer's endorsement that the deed was, in fact, interlined and Conover's wife made a grantee by interlineation, and exclude his endorsement that the parties consented, and go further and say that the endorsement is evidence of the fact that the interlineation was accomplished after the execution and delivery of the deed and after the death of Mr. Conover, these cases become authority for complainant.
The result is that the court holds that the endorsement of Somers, being that of a stranger, is not proof of the things certified therein and may not be used as proof that the deed was, in fact, interlined, either before or after its execution and delivery, and that there being no proof of interlining, the deed must be considered as a conveyance from the grantors therein named to Joseph Conover and Ruhama, his wife, as tenants by the entirety, of the premises therein described, and Mr. Conover having predeceased his wife, she became seized of the entire two-thirds interest conveyed by said deed, and that having been the owner of one-third thereof at the time of the conveyance aforesaid, those claiming under Mrs. Conover take her entire fee in said premises and that complainant and those defendants who joined complainant have no interest in any part thereof.